(No. 25222.—

JOHN M. SIMPSON *et al.* Appellants, *vs.* THE CITY OF HIGH-
WOOD *et al.* Appellees.

*Opinion filed October 13, 1939.*

PAUL C. BEHANNA, for appellants.

HALL & HULSE, RAYMOND G. ZACK, RUNYARD & BE-
HANNA, HOLLAND M. CASSIDY, ESSINGTON & McKIBBIN,

and George S. McGaughey, (Albert L. Hall, William Behanna, and Hamilton K. Beebe, of counsel,) for appellees.

Mr. Justice Jones delivered the opinion of the court:

The city of Highwood owns a system of water mains, hydrants and appurtenances, for fire protection and distribution of water to its inhabitants. It obtains the water by purchase from the adjacent city of Highland Park. The questions in this case involve the validity of proceedings by the city of Highwood to provide facilities for a water supply from Lake Michigan, to be connected with the existing system. Plaintiffs filed a representative suit in the circuit court of Lake county against the city, its officers, the engineers, the contractors, the grantors of a tract of ground conveyed to the city on which to locate a water tower, and the purchaser of water revenue bonds issued to finance a portion of the cost. The relief prayed is that the ordinance providing for the project and bond issue, all contracts thereunder, an ordinance for hydrant rental, and the bonds, be declared null and void; that the city officers be enjoined from expending the fund derived from the sale of the bonds; that the purchaser of the bonds be enjoined from disposing of them and be required to return them to the city, and that the ground purchased be reconveyed to the grantors. The defendants answered and upon a hearing a decree was entered dismissing the amended complaint for want of equity. Under a certificate of the chancellor that the validity of a municipal ordinance is involved and that public interest requires a direct appeal to this court, the cause is here on an appeal by plaintiffs.

The proceedings provide for establishing a pumping and purification plant, a water tower, and a water main to connect with the existing system, to be financed by a Federal grant of $80,120, and water revenue bonds of $165,000, payable solely from the income of the completed project.

The bonds bear interest at three and one-half per cent per annum, the principal maturing serially from 1941 to 1973. By a special act of Congress the city obtained an easement for the construction and maintenance of the pumping and purification plant and a water main on the Fort Sheridan Military Reservation adjoining the city on the north. A tract on which to erect the water tower was purchased from private parties. The bonds have been sold, construction contracts were let, work on the project begun, and a hydrant rental ordinance passed. The city has no contract with the city of Highland Park for a water supply. A former contract expired and the water furnished is paid for monthly as used at the rate of fifteen cents per hundred cubic feet. The bonds were sold at a price that will cost the city 5.05 per cent annual interest on the amount received.

The statute under which the proceedings were had is the act authorizing any city, village or incorporated town with a population of less than 500,000 to build or purchase, and to operate, a waterworks system or water supply system, and providing that any such municipality "owning and operating a waterworks or water supply system" may improve and extend such system, and provide for the cost thereof by the issue of revenue bonds payable solely from revenue derived from the operation thereof. Ill. Rev. Stat. 1937, chap. 24, par. 440, *et seq.*

One of the basic questions to be first determined is whether the city owns and operates a waterworks within the meaning of the statute. Appellants claim that the term "waterworks," to be given its ordinary and accepted interpretation, of necessity includes machinery and equipment for pumping, filtration, treatment and purification of water. Such an interpretation would exclude a system where a water supply by gravity obviates the necessity of pumping, and all systems using untreated water. Nor is it necessary that the source of supply be owned by the municipality, which, in many instances, might be obtained only from

leased premises. It could not be seriously contended that any of these is not a waterworks. The provision for improvement and extension obviously contemplates such a project for systems which do not have complete facilities. Our conclusion is that the term as used in the statute includes such a system as the one owned and operated by the city of Highwood. This view is supported by the definition of "waterworks" in section 2 of the act authorizing the purchase, construction and improvement of waterworks systems and providing for the issue of similar water revenue bonds. (Ill. Rev. Stat. 1937, chap. 24, par. 456b.) It is there provided that the term "waterworks" as used in the act shall be construed to mean and include a waterworks system in its entirety, or any integral part thereof, including mains, hydrants, standpipes, impounding reservoirs, purification plants and other enumerated items.

The several steps in the proceedings were taken at special meetings of the city council. Appellants claim the proceedings were void because of a lack of written notice to each alderman, stating the object of the call, as prescribed by ordinance, and the absence of one, and in some instances, two aldermen from the special meetings. Without considering the testimony in that respect, it is sufficient to notice that at subsequent regular meetings of the city council, all the proceedings at special meetings were unanimously ratified. The project was authorized by statute. Where all the members of a city council are not notified of a special meeting, the proceedings thereat, which are not *ultra vires*, are validated by a ratification understandingly done at a subsequent regular meeting. (*City of Shawneetown* v. *Baker*, 85 Ill. 563.) The contention is untenable.

Section 3 of the act under which the proceedings were had requires that the ordinance providing for the project and bond issue shall, after its passage, be published once in a weekly newspaper published and having a general circulation in such municipality, or if there is no newspaper

published therein, then by posting copies in at least three of the most public places in such municipality. If the ordinance authorizes the issue of revenue bonds for the extension and improvement of a presently municipally owned and operated waterworks system to be constructed wholly or in part by a grant from the Federal Emergency Administration of Public Works, the ordinance shall be in full force and effect immediately upon such publication. In all other cases a referendum is required if petitioned for within twenty-one days after publication. If no such petition is so filed the ordinance goes into effect at the end of the twenty-one days. After the ordinance providing for the project and bond issue was adopted three copies were posted in the city. No publication in a newspaper was made at that time. Two of the posted copies did not have the signatures of the mayor and clerk, the date of passage and approval, or the yea and nay vote on its adoption. Within twenty-one days thereafter a petition for a referendum was filed, signed by the requisite number of voters, and denied by the city council.

Appellants claim the ordinance never went into effect, because there was a weekly newspaper published in the city of Highwood and the law required publication of the ordinance therein; because, in any event, the copies posted were not complete copies of the ordinance, and because no referendum was had. There is printed and published in the city of Highland Park, a weekly newspaper, designated on the cover as *"Highland Park News."* Copies, with advertising matter, and generally the same news content, but with a cover bearing the title *"Highwood News,"* are distributed to the homes in Highwood by a resident employee of the printing company, who goes after the papers to the plant at Highland Park, takes them back to Highwood in a car, and they are thrown on the doorsteps of the houses. In inclement weather, they are thrown inside. The circulation in Highwood is free, which means there are no paid

subscriptions and no subscribers. The masthead on the first page shows the place of publication as Highland Park. After this suit was brought the ordinance was published in the *"Highland News."* The certificate of the publisher gives the place of publication as Highland Park. In *People* v. *Read,* 256 Ill. 408, relied upon by appellants, where a newspaper was circulated in different communities, we said the one in which it was first circulated was the place of publication. The *Highwood News* is not circulated in different communities, and that case has no application here. Manifestly, the fact that the city council in the year 1931, designated the paper as the official newspaper in which to publish legal notices, and that the ordinance here in controversy and some previous ordinances were published therein, does not serve to make Highwood the place of publication. Whatever the city council might do could not affect the question one way or another. The facts show the paper partakes more of the nature of a handbill or circular for the benefit of its advertisers than a newspaper, and that no newspaper, within the meaning of the statute, was published in the city of Highwood. In that event, posting was required. The signature of the mayor is no part of the ordinance. (*Terre Haute and Indianapolis Railroad Co.* v. *Voelker,* 129 Ill. 540; *Bumb* v. *City of Evansville,* 168 Ind. 272, 80 N. E. 625.) It is equally obvious that the clerk's signature, and the other matter mentioned, are not a part of the ordinance. The posting sufficiently complied with the statute. Inasmuch as the ordinance was for the extension and improvement of a presently municipally owned and operated waterworks to be financed by revenue bonds and a Federal grant, it went into effect immediately after its passage and posting, and no referendum was required. (*City of Mt. Olive* v. *Braje,* 366 Ill. 132.) The denial of the petition was proper.

The next ground urged for reversal is that the expenditure of the proceeds of the bonds, and the contracts for such expenditures were unlawful because there was no prior ap-

propriation for the expense of construction, engineering services or purchase of ground. Defendants claim that an appropriation was not necessary. Sections 2, 3 and 4 of article 7 of the Cities and Villages act (Ill. Rev. Stat. 1937, chap. 24, pars. 101, 103 and 104) require an annual appropriation for all corporate expenses and liabilities by specific purposes and amounts, and prohibit the making of any contract or the incurring of any expense without a prior appropriation. Those provisions are mandatory as to contracts and expenses payable from the general funds of the municipality. (*Avery* v. *City of Chicago,* 345 Ill. 640.) They apply not only to funds raised by taxation, but to miscellaneous receipts which are a part of the general funds. *People* v. *Sergel,* 269 Ill. 619.

In *DeKam* v. *City of Streator,* 316 Ill. 123, we held that under those provisions of the statute a contract for engineering services in designing a proposed local improvement, without a prior appropriation for the project, was void. At the time the DeKam contract was made the Local Improvement act made no provision for including engineering services in the cost of the improvement, and they could be paid only out of the general funds of the city. Subsequently the statute was amended and now permits the expense of engineering services to be included as a part of the improvement to be defrayed by special assessment or special tax. We have never held that contracts for or the expenses of constructing the portion of a local improvement which are not to be paid from general funds of a municipality must be preceded by an appropriation. The *DeKam case* is not controlling here. The contracts and expenditures in this case are in many respects analogous to those under a local improvement proceeding. While, in local improvements, the contractors take the bonds, and in this case they are paid from the proceeds of the bonds, we observe no material difference in the result. The bonds, in either case, are not an obligation of the municipality and the holder can look only to a special fund for payment, which

must be segregated and never becomes a part of the general corporate funds. It is significant that in paragraph 103 of the Cities and Villages act, above mentioned, one of the provisions is: "No expenditure for an improvement to be paid for out of the general fund of the corporation shall exceed in any one year the amount provided for such improvement in the annual appropriation bill," with exceptions not applicable here.

The purpose of requiring an appropriation specific in amount for each object is to enable the taxpayer to compel the application of public funds to the purposes for which they are appropriated, and to prevent the expenditure of greater sums for such purposes. Many items may be included in one general corporate purpose to which they are incident, if the general purpose is sufficiently definite to inform the taxpayer of the object. (*Siegel* v. *City of Belleville,* 349 Ill. 240.) Local improvement proceedings and the project here involved are alike in that respect. In a local improvement proceeding the improvement often consists of several items all incidental to the project. Here the various items all relate exclusively to the single purpose of improving the waterworks. It is not claimed the contracts are payable out of any fund other than the special fund derived from the sale of the bonds. On the contrary, the argument is based on the fact that they are payable from that fund only.

In *Tribune Co.* v. *Thompson,* 342 Ill. 503, a referendum was had on the question of issuing general obligation bonds of the city of Chicago to be paid by general taxation, without an antecedent appropriation. We held that the referendum dispensed with the necessity of an appropriation. We there cited with approval the holdings in *State* v. *Martin,* 27 Neb. 441, 43 N. W. 244, and *Pryor* v. *Kansas City,* 153 Mo. 135, 54 S. W. 499, in each of which it was held that where general obligation bonds were authorized by a referendum, and contracts were afterward let for the

improvement, no prior appropriation was necessary and the contracts were valid. In the *Missouri case* it is said no appropriation was necessary, since by the ordinance and the vote of the people, the proceeds of the bonds were put beyond the control of the common council either to apportion or control. That reasoning is applicable here. The proceeds of the bonds can be used for no other purpose than the one specified in the ordinance. In the *Thompson case* and the *Nebraska* and *Missouri cases* the proceeds were segregated by a referendum. In the case at bar the segregation is prescribed by law, as effectual in one case as in the other. The fact that there was no referendum here does not affect the principle involved. A referendum would give no more notice of the purpose and amount of the proposed expenditure than publication or posting of the enabling ordinance. It merely affords the interested parties an opportunity to express their choice on the proposition, of which they already have notice, and has no bearing on the question of notice or the segregation of a special fund. The parties in interest had notice of the purpose and amount of the proposed expenditure by the posting of the ordinance. They would have had no more notice or information by an appropriation ordinance. The fund cannot be increased or diverted by any act of the city council. The purposes of the statute invoked have been carried out and the interested parties have been afforded all of its benefits. The contracts and expenditures from the special fund are not invalid.

The contention that the ordinance for the project and bond issue is void because it pledges property and income and, as such, involves an indebtedness in excess of the constitutional and statutory limitations, is answered adversely in *Maffit* v. *City of Decatur,* 322 Ill. 82, and *Ward* v. *City of Chicago,* 342 id. 167. In each of those cases, the income from presently owned property, as well as that newly acquired, was, by contract in the *Maffit case,* and by ordinance

222

in the *Ward case,* to be put into a special fund and used to pay, in the *Ward case,* water revenue certificates, and in the *Maffit case,* the contracting water supply company. In each case, as here, no physical property presently owned by the city could be called upon to pay for the new facilities. We pointed out that in case of a deficit, the city might, if it so chose, pay the deficit, but no suit to recover it could be maintained, and held the contract in the one case and the ordinance in the other, were valid. The holdings were later approved in *Hairgrove* v. *City of Jacksonville,* 366 Ill. 163, and are controlling here. Furthermore, it is to be noticed that the city of Highwood has no income from water, except as it purchases the water, for which it has no contract, and resells it to consumers.

The testimony does not justify the claim that the bonds were fraudulently sold to a favored purchaser by stifling competition. One agent for a prospective purchaser made a preliminary inquiry, then left town and forgot about the matter. Another agent for another prospective purchaser made a bid and voluntarily abandoned it through courtesy to the bidder whose bid was accepted by a committee. Whether the acceptance was binding is immaterial, since the bid was later accepted by the city council and was the only one before them.

The ordinance for hydrant rental is not invalid as requiring payments in excess of the constitutional debt limit. The rate is fixed at $3.50 per hydrant per month, with a provision that the city shall not be bound to keep any of its fire hydrants connected to the system or available for service. It contains no number of hydrants to be paid for, and no specific time during which the rental must be paid. Moreover, two items of the amount for which it is claimed the city is indebted cannot be included. Without them the limit is not exceeded. One of these amounts is a claim for engineering services, for which a suit is pending against the city. There is no showing in the record that the city owes the claim. Asserting a claim or filing a suit does not

show a debt unless and until it is determined the city owes the claim. The other amount consists of a temporary transfer of $2000 from one fund to another, for the repayment of which a tax has been levied. Manifestly, this is not a debt of the city. The obvious purpose of temporary transfers from one fund to another is to avoid borrowing money and thus creating a debt.

The decree of the circuit court is affirmed.

*Decree affirmed.*