DeLeuw, Cather & Co., Appellant, v. City of Joliet, Appellee.

Gen. No. 10,058.

* See Callaghan's Illinois Digest, same topic and section number.

Heard in this court at the October term, 1945.

Opinion filed December 13, 1945. Rehearing denied February 6, 1946. Released for publication February 6, 1946.

DONOVAN, BRAY & GRAY, of Joliet, and LEE A. FREEMAN, of Chicago, for appellant.

EDWARD R. NADELHOFFER, Corporation Counsel for Joliet, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellant sued appellee in the circuit court of Will county, to recover on a *quantum meruit* for engineering services rendered in connection with a proposed new municipal waterworks system, to be financed by a Federal P. W. A. loan and grant of $1,790,000 alleging the value of the services rendered to be $46,350. The

city did not accept the allotment and abandoned the project. The trial was by a jury, and at the close of all the evidence the court reserved its ruling on the city's motion for a directed verdict, and the case went to the jury, which returned a verdict in favor of the plaintiff for $27,440. Thereafter, the court granted the city's motion for a directed verdict, also its motion for judgment notwithstanding the verdict, and entered judgment for the defendant notwithstanding the verdict, and the cause is here on an appeal from that judgment.

The record discloses that in 1933 and for some years previous, the city was obtaining its water supply from deep wells, approximately 1600 to 1800 feet deep. There were also some driven wells with shallow water supply, connected with the system. The city maintained nine pumping stations 24 hours a day with three shifts of 27 men. The cost of pumping water in 1933 was $46,138.66, and in 1934, $49,137.70. Six of the stations were equipped with air lift pumps, and the other three with deep well turbines. Owing to a drop in the level of the water table, the supply was constantly shrinking in volume, and cost of pumping was correspondingly increased. One well drilled in 1936 showed a drop of 95 feet in the water table in 6 years. There were frequent and repeated communications to the city officers from the State Department of Health calling attention to pollution and contamination.

Because of these conditions, a motion was made and carried at a meeting of the city council on April 3, 1933, instructing the city attorney to apply to the Federal R. F. C. for a loan for the purpose of constructing a trunk line sewer on the west side of the city, a new water supply and system, and sewage treatment. The city attorney had conferences with engineering firms pertaining to the work that might be necessary to accomplish the purpose of the motion and at his or the mayor's invitation, Charles DeLeuw, president of the

plaintiff corporation, met the city attorney and the mayor, W. A. Hennessy, in the latter's office at Joliet. The conference related to the preparation of an application for a new surface supply water system, the engineering features of it, and how the plaintiff would be compensated for his work. A verbal agreement was made that the plaintiff was to do the preliminary engineering work, make a survey of various possible sources of supply, and was to be paid if the city received an allocation from the government to defray the expenses, but was not to be paid in case the city did not receive an allocation. On April 10, 1933, the plaintiff wrote the mayor, confirming the conversation as to engineering services. ''In view of the probability of the passage of Federal legislation which will provide an advantageous means of financing municipal public works and also in view of the present financial situation of your city, we will undertake the necessary preliminary engineering examinations and reports upon your order with the understanding that our fees are to be subject to the successful financing of the work and to the approval of either the R. F. C., the Federal Administrator, or other agencies to be created by the Government.''

The work for which recovery is sought was then begun by the plaintiff, including examination of the distribution system, investigation and surveys of surrounding territory for a prospective reservoir site, and numerous conferences were had with and reports made to the city attorney and other city officers. The city attorney made a written report to the city council at its regular meeting on July 17, 1933, advising them of the percentage of the cost available from the government as a grant, and that the portion of the cost to be paid by the city could be obtained as a loan secured by water revenue bonds, payable solely out of revenues of the waterworks, and which would not be a general obligation of the city. The report recommended that

the city proceed at once with the necessary steps to place the waterworks project before the Federal District Administrator of Public Works. At that meeting the city attorney's report was adopted and a motion was made and carried to retain the plaintiff as the engineers for the necessary engineering work to be done in regard to the preparation and carrying on of the building of a new surface water supply system for the city; and the city attorney was instructed to prepare an ordinance for a new water supply system, and to make application to the government under the National Industrial Recovery Act for a loan to carry out and complete the same.

Thereafter, on August 28, 1933, a written contract between the city and the plaintiff was executed by the proper officer of the plaintiff, and by the mayor, and attested by the city clerk, on behalf of the city. The contract provided for two different types of work, (1) the preliminary work necessary to petitioning for and obtaining Federal financial aid; and (2) supervision of construction after such aid was procured. The plaintiff was to be paid 3 per cent of the cost of the project, including land acquired, upon completion of the financing of the project and the letting of the contract, and during construction, 2 per cent of the amounts paid to the contractor, with a provision that in the event that Federal aid was denied, the plaintiff would make no charge for services performed. The contract also provided that the city was to co-operate with the engineers in the prosecution of the contract and further the contract by every possible means.

The plaintiff then prepared a detailed report covering the prospective growth and future water needs of the city; data pertaining to eight possible sources of supply, with the relative advantages and costs of each; recommended the DuPage river project, with its proposed reservoir, purification plant, distribution system and its estimated costs and revenues. Five

copies of this report were delivered to the city early in September 1933.

Under date of September 25, 1933, the engineer of the State water survey division sent the mayor a communication dealing with the recession of the water, drought, expensiveness of well supply operation, benefits from surface supply with reference to purity and softness, and the advisability of taking advantage of Federal assistance in securing a new supply.

Frequent conferences were had by the plaintiff with the State and Federal representatives of the Federal administrator and with officials of the Illinois department of public health, and the division of waterways of the department of public works and buildings. The application for the loan, and detailed plans and specifications were drafted, submitted and modified to meet the suggestions of the various departments, and the application was executed by the mayor and the city attorney, and it, with four copies of the blue prints, plans and specifications, together with consents of the two State departments mentioned, and copies of the resolution authorizing the city attorney to make the application were filed with the P. W. A. in November 1933.

The application for the loan and grant was approved and an allotment not to exceed $1,790,000 was made by the Federal emergency administration of public works on June 20, 1934 which was given presidential approval on June 27, and the mayor was notified thereof by letter on June 29, 1934. Thereafter, the government officials, on five different occasions, up to November 25, 1934, wrote the mayor, W. A. Hennessy, asking advice as to what had been done about accepting the loan. Each of the communications indicates that no reply was had to previous communications. On November 27, the Federal administrator, Harold L. Ickes, wired the mayor by day letter that having received no reply to his letter of November 10 and no advice with

respect to the contract for the loan, he would present a resolution at the next meeting of the board of public works to rescind the loan. On December 19, 1934 the mayor was notified that the loan had been rescinded. On the face of the Ickes day letter of November 27, 1934, appears the following penciled notation: "We wrote Ramsey 10/23 giving facts of delay due to political factions." It appears that the ordinance for a new water supply, which the city attorney was directed to prepare, accompanied the form of contracts concerning the loan, sent by the P. W. A. to the city, neither of which was acted upon by the city council.

The recovery sought under the amended complaint is on a *quantum meruit* for the services rendered. Appellant urges that under the proceedings of the city council above mentioned, and the acts of the mayor and the city attorney, plaintiff was legally employed to perform the services rendered and is entitled to recover the reasonable value thereof. Among the contentions of appellee are the claim that the proceedings of the city council are void because of a lack of showing that the "resolutions" introduced in evidence by appellant were put on file for public inspection for one week prior to their passage, as required by section 19-52 of the Cities and Villages Act, (Ill. Rev. Stat. 1943, ch. 24, par. 19-52 [Jones Ill. Stats. Ann. 21.1494]), applicable to municipalities operating under the Commission Form of Municipal Government Act, adopted by the City of Joliet. The city also claims that neither the city attorney nor the mayor had any authority to employ plaintiff for the city at the conference held in the mayor's office; that the written contract of August 28, 1933, was void because the mayor and city clerk had not been authorized by the city council to execute the same on the part of the city; and that appellant cannot recover because no appropriation was made for the expense prior to the employment or the rendering of the services and because the

city was already indebted beyond the constitutional and statutory limitations. Other defenses challenging the necessity of such an expensive project, its efficiency, and alleging fraud on the part of appellant, are urged by appellee.

A motion for a directed verdict, or for judgment notwithstanding the verdict, presents only a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiff, there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case. If there is any evidence tending to sustain every element of the plaintiff's case necessary to be proved to sustain the cause of action, it is immaterial upon which side the evidence is introduced. No contradictory evidence or other evidence of any kind or character will, in such case, justify a directed verdict or a judgment notwithstanding the verdict, except uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense. If there is in the record evidence which, standing alone, tends to prove the material allegations of the complaint, a motion for a directed verdict, or for judgment notwithstanding the verdict, should be denied, even though upon the entire record the evidence preponderates against the party in opposition to the motion, so that a verdict in his favor could not stand when tested by a motion for a new trial. (*Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300–311.)

As to the claim that the ''resolutions'' of the city council introduced in evidence by appellant were void under section 19–52 of the Cities and Villages Act, it will be noted that that section pertains only to ordinances and resolutions. No ordinance or resolution of the city council was introduced in evidence by appellant, and the only proceedings of the city council intro-

duced in evidence by him were motions, seconded and carried. The fact that both parties designate such motions as resolutions in their pleadings and in their briefs, does not make them so. There is a difference between a motion and a resolution. A motion is a proposal or suggestion looking to action in a deliberative assembly, while a resolution is a statement or verdict, especially a formal expression of the opinion or will of a public assembly, adopted by a vote. (Webster's Unabridged Dictionary.) The section invoked by appellee does not purport to apply to motions. Furthermore, even if resolutions and motions were synonymous, it is well established that where a municipality has power to perform an act in question, a failure to take a requisite step is a matter of affirmative defense, which must be made by allegation and proof. (*City of Chicago v. English,* 180 Ill. 476; *City of Chicago v. Peck,* 196 Ill. 260, 263.) There is no allegation or proof in the record either that the motions were or were not so on file and the contention of appellee is untenable.

If, as contended by appellee, the direction of the city council to the city attorney, on April 3, 1933, to apply for a Federal loan, did not authorize either the city attorney or the mayor to employ appellant at the subsequent conference in the mayor's office, and if the mayor and the city clerk were never authorized by the city council to execute on behalf of the city the written contract of August 28, 1933, with appellant, the fact remains that appellant was retained by the city to do the engineering work at the regular meeting of the city council on July 17, 1933. No price for the services was mentioned in the motion, and, if appellant is entitled to recover, it must be on a *quantum meruit,* which the parties agree is the basis claimed. Appellee's contention that appellant seeks to recover on an implied contract has no foundation.

Appellant takes the position that it was not to be paid from the general revenue of the city, but only out of the special fund to be derived from the Federal loan and grant, and that therefore no prior appropriation was necessary. Paragraph 3 of the amended complaint alleges that the parties intended the project to be constructed under the Act of April 22, 1897, as amended on July 2, 1931 (Ill. Rev. Stat. 1933, ch. 24, pars. 440–446), authorizing municipalities of less than 500,000 population, to build a waterworks system or water supply system, or to improve or extend such a system and to pay the cost thereof by the issue of revenue bonds payable solely from revenue derived from the operation thereof. The answer does not deny this allegation, and it therefore stands as admitted to be true. Section 3 of the Act mentioned provides that such revenue bonds shall not in any event constitute an indebtedness of the city within the meaning of constitutional provisions or limitations, and that each bond shall state on its face that it does not constitute an indebtedness of the municipality within any constitutional or statutory limitation. Section 7 provides that "This shall be deemed and construed to confer powers in addition to but not limiting those now existing." The adoption by the city council of the city attorney's report above mentioned, also supports appellant's claim that the cost of the improvement was to be paid from the Federal loan and grant and not from the general funds of the city, and appellant's letter to the mayor indicates that the engineering fees were to be paid from that fund. The application for the Federal loan also shows (in the details of the proposed uses of the money) an item of $95,000 for engineering charges. In *Gray v. City of Joliet*, 287 Ill. 280–284, it is held that the adoption of one mode of payment for a local improvement excludes the idea of payment by the other. That doctrine is applicable here. The record thus

shows that appellant's compensation for engineering services was to be paid out of the Federal loan and grant and not from the general corporate funds of the city, and there is no testimony to the contrary.

Appellee's contention that nevertheless, a prior appropriation is a prerequisite to a valid contract of employment, even though the compensation was payable only from such special fund and not from the general corporate funds, is answered adversely to its contention in the recent case of *Simpson v. City of Highwood,* 372 Ill. 212, citing former decisions of the court, and distinguishing others, of which latter class some are relied upon by appellee. The *Simpson* case was decided after the 1930 amendment to section 4 of article 7 of the Cities and Villages Act, (Ill. Rev. Stat. 1933, ch. 24, par. 104) also relied upon by appellee, providing: "Any contract made, or any expense otherwise incurred, in violation of the provisions of this section (prohibiting the making of any contract or the incurring of any expense without a previous appropriation) shall be null and void as to said corporation and no moneys belonging thereto shall be paid on account thereof"; and it is significant that the court in that case quoted the provision of the preceding par. 103 that "No expenditure for an improvement to be paid for out of the general fund of the corporation shall exceed in any one year the amount provided for such improvement in the annual appropriation bill." It is obvious that the court applied the fundamental rule of statutory construction, that all the provisions of the statute must be construed together. It is also held in *Gray v. City of Joliet, supra,* and *Markman v. Calumet City,* 297 Ill. App. 531–541, that no appropriation is necessary when payment under a contract is to be made from a special assessment. In our opinion, such cases are analogous to the situation in this case, and the holdings are applicable here. Cases cited by appellee where the obligation was to be discharged by

payment from the general corporate fund, have no application here.

So, too, appellee's claim that the employment of appellant was void because the city was already indebted beyond its constitutional and statutory limitation, falls by the same token. (*Ward v. City of Chicago*, 342 Ill. 167; *Hairgrove v. City of Jacksonville*, 366 Ill. 163; *Simpson v. City of Highwood, supra.*)

Appellee's attempt to distinguish cases in which the special fund had been set up by an ordinance, on the ground that in this case no ordinance was passed, and therefore no special fund was set up or provided for, is without merit. The application for the Federal loan and grant, expressly providing for the payment of the cost of the improvement, specifically including the engineering charges, from the special fund applied for, and the Federal grant made pursuant thereto, was manifestly a setting up of the special fund. Appellee's claim that the action of the government was only an offer, is untenable. The offer was made by the city, and the government accepted the offer, and allocated the fund, which was a setting apart of it, and the rescinding of the grant was by the fault of the city alone. The further insinuation that the government rescinded the grant while the city council was considering the matter, is not borne out by the record, which shows that the grant, the proposed contract with the government, and the proposed ordinance, submitted by the government, were never presented to the city council. The claim that the city did not abandon the project is refuted by the answer to the amended complaint, which specifically alleges that the city did repudiate the alleged contracts with the plaintiff and abandoned the entire project.

It is the general rule that where one party abandons an express contract, or makes it impossible for the other party to further perform, such other

party may treat the contract as rescinded and sue on a *quantum meruit*. (*Lake Shore & M. S. R. Co. v. Richards,* 152 Ill. 59, 90; *Banik v. Bishop-Stoddard Cafeteria Co., Inc.,* 288 Ill. App. 174, 179.) This doctrine was applied in *Gray v. City of Joliet, supra,* in a special assessment proceeding where expenses were incurred in preparing an assessment roll, and the project was afterward abandoned by the city. It was held in that case that even though the statute provided that expenses connected with a local improvement shall be payable only out of the special assessment fund, the provision does not apply where the city abandons the proceeding without levying an assessment, and the city could not relieve itself from liability to pay reasonable expenses incurred in preparation for the assessment where it abandoned the proceeding before confirmation. To the same effect are *Bunge v. Downers Grove Sanitary Dist.,* 356 Ill. 531, 537; *Mann v. Downers Grove Sanitary Dist.,* 281 Ill. App. 412; *Deleuw & Co. v. City of Charleston,* 298 Ill. App. 403, 411, and *Murrie v. Harper,* 249 Ill. App. 586, which hold that in such case, the municipality is liable out of the general fund.

In *Hancock v. Village of Hazel Crest,* 318 Ill. App. 170, relied upon by appellant, a proposed sewer system project, (where the plaintiff in that case furnished engineering services) was initiated under a statute providing for payment of the cost by revenue bonds payable only out of revenues from the improvement, and for a referendum. The vote at the election was against making the improvement, and the village abandoned it. In a suit by the engineer to recover upon *quantum meruit* for his services, his claim that because the defendant abandoned the project, payments which were to be contingent upon realization of the funds, became payable by operation of law out of the general fund independent of the agreement of the parties, and because thereof, was not a voluntary

assumption of liability and was therefore not subject to constitutional limitation, was denied, upon the ground that the parties knew and had in mind the statutory contingency under the referendum, and that the village board could not bind the voters, who were not a party to the contract. A salient difference between that case and the case at bar is that section 3 of the Act under which the waterworks project was initiated by the City of Joliet, as amended on May 10, 1934, (Ill. Rev. Stat. 1935, ch. 24, par. 1089) provided that when the ordinance authorizing the issue of revenue bonds declared that such extensions and improvements were to be paid for, either wholly or in part, by a loan or grant from the Federal emergency administration of public works or other Federal agency, then the ordinance authorizing the issuance of any such revenue bonds should be in full force and effect immediately upon its passage, approval and publication, anything in that Act or any other law to the contrary notwithstanding. This dispensed with any referendum in such case, while in the *Hazel Crest* case the statute under which the sewer project was initiated. (Ill. Rev. Stat. 1943, ch. 24, pars. 62–1 to 62–12 [Jones Ill. Stats. Ann. 21.2029 *et seq.*]), contained no such provision, but the project was subject to a referendum. By the date of the Federal grant in the case at bar and the date on which the mayor was notified thereof, it is obvious that the provision mentioned would have been applicable to any such ordinance passed by the city council. The holding in the *Hazel Crest* case is not applicable here, and the decisions of the Supreme Court in *Ward v. City of Chicago, supra; Hairgrove v. City of Jacksonville, supra;* and *Simpson v. City of Highwood, supra,* are controlling.

Briefly summarized, the facts show that appellant was employed by the city council on July 17, 1933, to do the engineering services; that it performed the

preliminary services; that it was to be paid from the proceeds of the Federal loan and grant, and not from the general corporate fund; and that the employment was never rescinded. Under the law no prior appropriation was necessary, and neither the project nor the employment of the engineer created any debt of the city beyond any constitutional or statutory limitation. The employment was therefore legal, and the amount of his compensation not having been set when he was employed, he is entitled to recover the reasonable value of such services.

Appellee's contention that appellant takes the position that the city was legally bound to pass the ordinance and execute the loan and grant agreement, no matter what conditions were attached, is without any foundation. Appellant makes no such contention, and appellee's argument, with citations of authority, that a city cannot delegate its discretionary powers, or barter them away by contract is beside the mark, and has no bearing on any issue in the case.

As to the necessity of such an expensive project, the record shows that the employment of appellant was for services on a new surface water supply system, the estimated cost of which was included in detail in the application made by the city for the Federal loan and grant, and it does not appear in the record that any objection to the cost was ever made by the city until this suit was instituted. The testimony as to whether the proposed reservoir would leak or furnish a sufficient amount of water for the needs of the city is in conflict, and there is no testimony in the record that tends to show that appellant acted fraudulently in planning an expensive improvement in order to secure a large engineering fee, or otherwise. Appellee's claim that the press and public opinion were against the project and that this also made the city pause, is without any foundation in the record. On the contrary, the application for the loan and

grant, filed by the city, shows that the project had the indorsement of at least six civic and other associations, and their letters of indorsement accompanied the application.

Under the rule in the *Merlo* case, *supra,* the trial court could not, on the motion for a directed verdict, or a motion for judgment notwithstanding the verdict, consider. any conflicting testimony, or any testimony except in its light most favorable to appellant. When considered in that aspect, it is clear that appellant was entitled, under the settled law, to a judgment on a *quantum meruit.* The testimony as to the reasonable value of the services performed is in conflict, but the verdict is within the range of the testimony, and judgment should have been entered on the verdict.

The return of the verdict, the motion for judgment notwithstanding the verdict, and the judgment notwithstanding the verdict were all in the year 1945. The record shows that the defendant did not make a motion for a new trial. Under Supreme Court Rule 22, in effect November 25, 1941, the failure to do so is a waiver of the right to apply for a new trial, and there is therefore no necessity to remand the cause. The judgment for the defendant notwithstanding the verdict is reversed, and judgment on the verdict in favor of the plaintiff against the defendant for $27,440, is entered in this court. (*Todd v. S. S. Kresge Co.,* 384 Ill. 524, 529; *Schwickrath v. Lowden,* 317 Ill. App. 431, 436.)

*Judgment for defendant reversed and judgment for plaintiff entered in this court upon the verdict.*