Earl H. Beling, doing business as Beling Engineering Consultants, Plaintiff-Appellant, v. City of East Moline, a municipal corporation, Defendant-Appellee.

Gen. No. 10,995.

Second District.

February 27, 1957.

Additional Opinion September 16, 1957.

Released for publication October 4, 1957.

Andrew Kopp, of Moline, for appellant.

Ben A. Stewart, and Roy H. Glockhoff, both of East Moline, for appellee.

JUSTICE EOVALDI delivered the opinion of the court.

This is an action at law to recover $36,022.26, with interest from August 19, 1953, for services which the complaint alleges the plaintiff rendered the defendant as the engineer designing a water works system. The city answered the complaint, alleging, among other things, that there was no appropriation ever made for

the payment of the amount claimed as being due the plaintiff under his contract out of the general corporate funds of the city, and therefore the city was not liable.

The facts as set forth in the pleadings are that the city had adopted an ordinance providing for water work expenses and improvements, the entire cost of which, including the engineering expense, was to be paid out of funds derived from the sale of revenue bonds, which bonds were to be a lien against the water revenues only and not a general obligation of the city. A contract was entered into between the city and the plaintiff for engineering services and some work was performed. The city abandoned the project, repealed the ordinance, no revenue bonds were issued, and no funds are available with which to pay the plaintiff.

The issues made by the pleadings were submitted to the trial court without a jury, resulting in a judgment in favor of the city and against the plaintiff in bar of the action and the plaintiff appeals.

The defendant relies upon two points to sustain the judgment of the circuit court. These are: (1) That under the provisions of chapter 24, section 15—3, of the Cities and Villages Act [Ill. Rev. Stats. 1955, ch. 24, § 15—3], the contract sued upon by plaintiff is null and void for want of a prior appropriation, and no money belonging to the defendant municipality may be paid on account thereof; and, (2) That plaintiff at the time of the making of the contract in question was not the holder of a certificate of registration issued by the State of Illinois as a registered structural engineer; that the work called for in said agreement could only be done and performed by a registered structural engineer, and not by an architect or professional engineer and that by reason thereof the plaintiff could not lawfully enter into said contract, as he was prohibited by law from practicing or attempting to practice struc-

tural engineering. (Ill. Rev. Stat., 1953, chap. 131½, sections 1 and 2.)

The plaintiff's theory is, (1) that because the contract provided payment of plaintiff's fees from the special fund raised by the sale of water revenue bonds, the statute does not apply; (2) that when the contract was made it was not contemplated that any payment under it would come from the city's general funds; (3) that the making of the contract did not create the liability for which plaintiff is suing; (4) that the liability for which plaintiff is suing was later created by defendant city when it decided to terminate the contract; and, (5) it was the act of the defendant city in repealing the bond ordinance and not continuing with plaintiff in the project that prevented the special fund from coming into existence.

The applicable statute is chapter 24, sec. 15—3, Ill. Rev. Stat., the Cities and Villages Act, which provides as follows:

"No contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof. . . ."

The leading case supporting the ruling of the trial court is that of DeKam v. City of Streator, 316 Ill. 123. In that case the plaintiff and fifteen others, taxpayers of the city of Streator, filed a bill in equity to restrain the city officials from paying one G. L. Clausen, an engineer, further sums of money in accordance with

267

certain contracts entered into between the city and Clausen whereby he undertook to design a sewer system for the city. The circuit court entered a decree granting relief to complainants in accordance with the prayer of their bill. On appeal the Appellate Court decided the matter on the merits, reversed the decree and remanded the cause. A certificate of importance having been granted, the cause was reviewed by the Supreme Court. Clausen's final bill for services amounted to $34,263 upon which he had been paid $3,000. He completed his work some time prior to March 8, 1920. On May 17, 1920 the annual appropriation ordinance was passed which contained the following items: "Special fund for new sewer system engineer, $5,000." That amount was then paid to Clausen. The statute applied by the court was the same statute upon which the defendant in the instant case relies. On page 128 of the opinion the court said: "The contract was void because it was prohibited by law." On page 129 of the opinion the court said:

"A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts."

On page 132 the court said:

"Since no appropriation of money had been made for the new sewer system the contract of February 14, 1919, was void, and not only is everyone presumed to have known that the city and all of its officers were prohibited from making the contract, but the writing itself shows that the parties to it had this prohibition actually in mind at the time, for the writing expressly mentions the inability of the city to enter into a contract. This instrument was confessedly void, and being void was incapable of ratification."

268

On page 133 the court said:

"In the absence of an appropriation there was no liability, and if it should be held that there was a liability, the provision which the statute intended for the protection of tax-payers would be nugatory and of no avail."

It was also contended by the engineer in that case that the defendant city of Streator and its officers were estopped to question the legality of the contracts. The court answered this contention as follows (p. 136):

"However, the question of estoppel does not enter into the case. The city cannot be estopped to dispute the validity of a contract which it had no power to make, for the reason that it has received the consideration. 'Everyone is presumed to know the extent of the powers of a municipal corporation, and it cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts simply because it has done them and received the consideration stipulated for' (citing cases)."

The DeKam case was followed by that of Simpson v. City of Highwood, 372 Ill. 212,—cited and relied on by both parties—which also dealt with the question of prior appropriations being necessary in order to give validity to contracts or expenditures incurred by municipalities. Plaintiffs there filed a representative suit against the city, the engineers, and others praying that an ordinance providing for a water project, bond issue and all contracts thereon be declared null and void. The defendants answered and upon a hearing a decree was entered dismissing the amended complaint for want of equity. The circuit court certified that the validity of a municipal ordinance was involved and the plaintiffs appealed directly to the Supreme Court where the decree was affirmed.

One of the contentions for a reversal of the decree was that the expenditures of the bonds and the con-

269

tracts for such expenditures were unlawful because there was no prior appropriation for the expense of construction, engineering services, or purchase of ground. The defendants there claimed that an appropriation was not necessary and with this contention the court agreed for in that case the bonds had been sold and the suit was to restrain the use of the special fund thus raised. There was no contention by the plaintiffs there that the city was about to pay out general funds without an appropriation. At page 220, the court said: "It is not claimed the contracts are payable out of any fund other than the special fund derived from the sale of the bonds." The court said, at page 219:

"We have never held that contracts for or the expenses of constructing the portion of a local improvement which are not to be paid from general funds of a municipality must be preceded by an appropriation."

Here the plaintiff proposes to obtain a judgment payable out of general funds, there being no special fund available. It is, therefore, clear that the Simpson case, supra, is entirely consistent with the holding of the Supreme Court in the DeKam case, supra, and that the Simpson case is not authority sustaining plaintiff's contentions.

A more recent Supreme Court case involving the legal question at issue in this case is that of Branigar v. Village of Riverdale, 396 Ill. 534. Branigar Brothers were real estate subdividers. They became interested in two subdivisions within the Village of Riverdale, comprising some 3000 lots which were offered for sale in certain units. In connection with said development, they entered into a contract with the village for extension of water mains into their additions. The village, not having the money to pay for such an extension of its waterworks system, agreed that Branigar Brothers should finance and construct the extension,

270

and the village would reimburse them at the rate of 25 per cent of all water rents collected from the users of the facilities. An ordinance was passed by the village authorizing the contract and such payment to Branigar Brothers. The total cost of the improvement amounted to $165,831.51. The village failed and refused to honor the contract and the plaintiffs filed a complaint for an accounting against the village.

At the time of the hearing, 530 properties in these subdivisions were served with water and the total rates collected from this extension from 1932 up to and including October 1, 1945, was $31,805.21. A total of $206.98 was paid by the village to Branigar Brothers on the contracts up to the last payment which was made on April 30, 1932. Branigar Brothers requested payment on the contracts in letters to the village president and village attorney. Complaint herein was filed, praying for an accounting of the amounts due Branigar Brothers under the contracts and for a direction to the defendant to pay 25 per cent of all amounts collected for water served within the two subdivisions in question. The circuit court found for plaintiffs. The trial judge certified that the validity of a municipal ordinance was involved, and the case was appealed directly to the Supreme Court. One of the defenses made in the circuit court and urged upon the appeal was that no prior appropriation having been made for the expense of the system, the contracts were a nullity. In affirming the decree, the court stated at pages 543–544:

"Whether an appropriation must have been made in this cause before such contract with Branigar Brothers could become valid depends on the cases decided in like situations."

"A study of the cases in point discloses that distinction is made in those situations in which the contract results in a debt against the municipality proper and

271

those cases in which the payment of the contract price is limited to a special fund."

At page 545, the court further said:

"The distinction in the above cases depends on whether the special fund is a part of the general fund or a segregation of income which never becomes a part of the general fund. It would seem clear, on the authorities cited, that in the instant case no debt was created on the part of the defendant village. The appellees can never look to the taxes or the general fund of the village for payment. They can only look to 25 per cent of the water revenues collected from the particular extensions in question, and on this basis the case falls within the rule of Simpson v. City of Highwood, 372 Ill. 212, and can be distinguished from the cases of Schnell v. City of Rock Island, 232 Ill. 89, and City of Joliet v. Alexander, 194 Ill. 457, where existing properties and income of the city were pledged to the payment of the amounts due."

■■■■ The contract in question is void for want of a prior appropriation, the purpose of the statute being to protect the municipal treasury against the incurring of liabilities which exceed the appropriation or for which none has been made. Avery v. City of Chicago, 345 Ill. 640, 651. Without a prior appropriation, it is impossible for a city to create a liability against itself payable out of its general funds. Gathemann v. City of Chicago, 263 Ill. 292, 298. This law is mandatory and was enacted for the protection of the taxpayer. Empire Voting Mach. Co. v. City of Chicago (C.C.A. 7th Cir.) 267 Fed. 162 (Certiorari denied, 65 Law Ed. 453); People v. Sergel, 269 Ill. 619, 622; Avery v. City of Chicago, supra. The law is intended to operate as a limitation upon the powers of all the officers and departments of the municipal corporation. DeKam v. City of Streator, supra, at 132; Empire Voting Machine Co. v. City of Chicago, supra, at 164, 165. Neither

272

evasion, nor circumvention of the statute is tolerated by the courts. Nor may one do indirectly what he could not lawfully do directly. DeKam v. City of Streator, supra; Simpson v. City of Highwood, supra; Branigar v. Village of Riverdale, supra; Galion Iron Works & Mfg. Co. v. City of Georgetown, 322 Ill. App. 498, 502, 505. And in the event the municipality for any reason fails or neglects to interpose the defense of nullity in an action brought to recover under such contract, any taxpayer may sue to restrain the payment by the municipality of any of its funds on account thereof. Litz v. Village of West Hammond, 230 Ill. 310; DeKam v. City of Streator, supra.

We have examined the other authorities cited by appellant, but are of the opinion that they are not controlling. In the view we take of this case, it is not necessary that we consider the other questions presented by this record.

The judgment of the circuit court is affirmed.

Judgment affirmed.

DOVE, P. J. and CROW, J., concur.

ADDITIONAL OPINION ON REHEARING

JUSTICE WRIGHT delivered opinion on rehearing.

On petition for rehearing plaintiff contends that the opinion rendered herein on February 27, 1957, affirming the trial court and holding that the Beling contract is null and void for want of a prior appropriation having been made by the defendant city to pay for services to be rendered under the alleged agreement, overlooks the distinction to be made when the agreement provides that payment for services rendered thereunder are to be made out of a special fund and not out of the general corporate fund of the city.

Plaintiff's theory is that the agreement here in question provides that the plaintiff is to be paid for his engineering services rendered under the agreement out of a special fund to be derived from the sale of water revenue bonds, and further that it was intended and contemplated by the parties to said agreement that the plaintiff was to be paid for his services out of said special fund and not out of the general fund.

Furthermore, plaintiff contends that the foregoing facts were alleged in the complaint and admitted by the answer of the defendant.

■ It is settled law in our state that where payment for engineering services under a contract such as we have here under consideration is to come from the general fund of the city, an appropriation for the payment of said services must be made prior to the execution of the contract, otherwise the contract is void. DeKam v. City of Streator, 316 Ill. 123; Galion Iron Works & Mfg. Co. v. City of Georgetown, 322 Ill. App. 498, 54 N.E.2d 601.

The law is well settled that where a city enters into a contract for the construction of a public works including engineering services, that provides for the payment of said services out of a special fund such agreement is valid. Simpson v. City of Highwood, 372 Ill. 212, 23 N.E.2d 62; DeLeuw, Cather & Co. v. City of Joliet, 327 Ill. App. 453, 64 N.E.2d 779.

Since the validity of a contract for the payment of engineering fees depends upon whether or not the fees are to be paid out of the general corporate fund or out of a special fund, it is now necessary that we examine the contract in this case which was entered into by plaintiff and defendant for the performances of certain engineering services in connection with the designing of a proposed water works for the defendant, in an effort to determine out of what fund payment for the services was to be made.

274

The provisions of the contract which are pertinent to the issues in question are found in Paragraphs 3 and 4 of said contract. Paragraph 3 provides in part: "The owner agrees to pay the engineers for the above professional services on a percentage basis. For the above complete services, the percentage paid the engineers shall be based on the total cost of the entire completed project. . . ."

Paragraph 4 provides in part as follows: "Payment shall become due as the work progresses on the basis that steps (a), (b), and (c) represent 20 per cent of the total fee; steps (d) and (e) represent 40 per cent; steps (f), (g), and (h) represent 15 per cent; and the balance of the steps represent 25 per cent of the total fee.

"When bonds are issued to finance this project, payments for steps (a), (b), (c), (d) and (e) shall become due and payable, based on the contracts as awarded.

"If bonds are not issued, it is agreed that payment for steps (a), (b), (c), (d), and (e), based on the engineer's current estimate, will be calculated, reduced by 50 per cent, and deferred, without interest. At this point, drawings will be approximately 65% complete, and ten sets of prints shall be delivered to the owner and shall become the property of the owner. Within three years after approved plans have been presented for bond ordinance purposes, this deferred payment, as previously calculated, shall become due and payable.

"This contract may be terminated by the owner, after the completion of step (e), or after the completion of step (h), upon payment of all fees due the engineers, if requested by two-thirds vote of all members of the city council."

After carefully reading and considering the above provisions of the contract which deal with the manner in which the plaintiff was to be paid and from what funds, we conclude that the contract on its face dis-

closes that the engineer was to be paid out of a special fund created by the sale of bonds, if such bonds were sold, but the contract further provides that in case bonds were not sold, the plaintiff was to be paid a part of his fee out of the general fund.

Paragraph 3 of the contract states in substance that the plaintiff is to be paid for his professional services on a percentage basis, but does not specify that he is to be paid from any particular fund.

Paragraph 4 provides in substance that when bonds are issued to finance the project, payment for certain work done by the plaintiff shall become due and payable but it is not stated out of what funds payment shall be made. Paragraph 4 further provides that if bonds are not issued, payment for certain steps will be calculated, reduced by 50 per cent and deferred without interest, and provides further that within three years after approved plans have been presented, this deferred payment as previously calculated shall become due and payable, which indicates that the defendant agreed to pay for part of the services rendered by the engineer out of the general fund if a special fund was not made available from the sale of bonds.

██ It may be true that the plaintiff under the terms of the contract was to be paid out of a special fund to be derived from the sale of water revenue bonds, if and when such bonds were issued, but the contract also obligates the defendant to pay for part of the services rendered by the plaintiff if no special fund was made available from the sale of water revenue bonds, and since the contract obligates the defendant to pay for engineering services under certain contingencies out of the general fund, the contract is in violation of Chapter 24, Sec. 15—3, Ill. Rev. Stats., Cities and Villages Act [Ill. Rev. Stats. 1955, ch. 24, § 15—3] which provides as follows:

"No contract shall be made by the corporate authorities, or by any committee or member thereof, and no

276

expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof. . . ."

The plaintiff contends that it was contemplated and intended at the time the contract was entered into that the plaintiff was to be paid from a special fund to be created by the sale of water revenue bonds. We do not think this contention tenable. In determining what was the intention of the parties, it is necessary that we examine the terms of the contract. We are of the opinion that the contract by its terms obligated the defendant to pay certain engineering fees out of the general fund, in the event that a special fund was not available.

The plaintiff in his petition for rehearing contends that this court in its original opinion overlooked the holding in certain cases, among them being Brown v. City of Evanston, 4 Ill.App.2d 124, 123 N.E.2d 850; People v. Village of Bradley, 367 Ill. 301, 11 N.E.2d 415; and People v. City of Rock Island, 271 Ill. 412, 111 N. E. 291.

We do not believe that these cases are analogous with the case at bar.

In Brown v. City of Evanston, supra, the court at pages 127 and 128 of 4 Ill.App.2d said:

"Plaintiffs' main contention is that the contract for the purchase of the Doetsch Pit by the city in 1948 is void for lack of a prior appropriation therefor as required by section 15—3, chapter 24 of the revised Cities and Villages Act, Illinois Revised Statutes 1947 (Jones Ill. Stats. Ann. 21.1386).

"We cannot agree with plaintiffs' contention because, as already pointed out, there being no obligation of any kind incurred by the city for the year 1948, when the contract was executed, no appropriation was legally required. This is the factual distinction to be made in considering the cases relied upon by plaintiffs. The facts alleged in the pleadings show that the city had ample funds available to meet its obligations when it accepted the deed and that proper appropriations were made by the city for the year 1949 and thereafter."

In Brown v. City of Evanston, supra, no obligation to pay was incurred by the city at the time of the execution of the contract. The obligation to pay was incurred at the time the city accepted the deed and sufficient appropriation had been made by the city at that time, whereas in the instant case the liability to pay was created and the obligation was incurred at the time the contract was entered into and no appropriation had been made at that time by the defendant.

In People v. Village of Bradley, supra, the contract as originally entered into obligated the city to pay the contractor out of funds collected out of special assessments levied. In that case the court at page 306 of 367 Ill. said:

"As the situation existed at the inception of the contracts between the contractor, sub-contractor and the village, the liability was limited to the funds collected from the special assessment levied."

Here again the factual situation is different for the reason that the contract provided that payment for the services rendered was to be made from a special fund and not from the general fund.

In People v. City of Rock Island, supra, at page 428 and 429, of 271 Ill. the Supreme Court said:

"Both of the improvements are still to be made, and until the time comes for carrying into effect this plan of public improvements no money is or need be appropriated for that purpose. Until that time comes no liability is incurred by the city to anyone by this ordinance. The fact that the ordinance contains provisions which will require the city at some future time to incur an indebtedness does not create a present liability within the provisions of that section of the statute for which an appropriation must be made before such ordinance is adopted."

Here again no obligation to pay was incurred at the time the ordinance was adopted. Whereas in the instant case, the obligation was incurred at the time the contract was entered into.

 We have examined the other authorities cited by the appellant and are of the opinion that they are not controlling since we find that the plaintiff was to be paid out of the general fund, if a special fund was not made available from the sale of revenue bonds. It is our opinion that the contract was void at the time of its execution because such contract is expressly prohibited by Sec. 15—3, Chapter 24, of the Revised Cities and Villages Act and a contract expressly prohibited by a valid statute cannot be enforced.

In DeKam v. City of Streator, 316 Ill. 123, at page 129, the Supreme Court said:

"A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts."

Since we take the view that the contract here in question was null and void at the time of its execution, we do not deem it necessary that we consider the other

279

question presented by this record. Except as modified herein, our original opinion and this additional opinion on rehearing will stand as the opinion of the court.

The judgment of the Circuit Court is affirmed.

CROW, P. J. and SOLFISBURG, J., concur.