(No. 16116.—Appellate Court reversed; circuit court affirmed.)
Peter DeKam et al. Appellants, vs. The City of Streator et al.—(G. L. Clausen, Appellee.)

*Opinion filed February 17, 1925.*

1. Municipal corporations—*contract with engineer for drawing plans for sewer system is void in absence of appropriation—injunction.* A contract entered into by the board of local improvements of a city with an engineer for drawing plans of a proposed sewer system is void where there has been no appropriation for such services, as section 4 of article 7 of the Cities and Villages act prohibits the making of any contract without a previous appropriation, and tax-payers may by bill in equity restrain the city and its officers from paying any money under the contract.

2. Same—*contract prohibited by statute cannot be enforced by estoppel.* A city cannot be estopped to dispute the validity of a contract which it had no power to make because prohibited by statute, as a city cannot be given power to do unauthorized acts simply because it has done them and received the stipulated consideration.

3. Contracts—*a contract prohibited by statute cannot be enforced.* A contract expressly prohibited by a valid statute is void, as the law cannot at the same time prohibit a contract and enforce it, and the courts cannot disregard the prohibition whether the contract is expressly prohibited or is contrary to the public policy of the State.

4. Same—*when a contract cannot be ratified.* A contract between a city and an engineer to prepare plans for a sewer system, which is void because no appropriation had then been made for the expense, cannot be ratified after an appropriation for a portion of the expense has been made; and even if a new contract is made, the amount to be expended cannot exceed the appropriation.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

BOYS, OSBORNE & GRIGGS, for appellants.

ANDREW HUMMELAND, and DUNCAN & O'CONOR, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Peter DeKam and fifteen others, tax-payers of the city of Streator, filed their bill on behalf of all other tax-payers as well as themselves, in the circuit court of LaSalle county, against the city, its officers and G. L. Clausen, to restrain the city and its officers from paying any further sums of money to Clausen in accordance with the terms of certain contracts theretofore entered into between the city and Clausen whereby he undertook to design a sewer system for the city. The city and its officers answered jointly, admitting, in substance, the allegations of the bill. Clausen demurred to the bill, his demurrer was overruled, and then he also answered. The cause was heard upon a stipulation as to most of the facts and some oral evidence, and a decree was entered in accordance with the prayer of the bill. Clausen appealed, the Appellate Court heard the cause and decided it on the merits, reversing the decree and remanding the cause. This judgment leaving nothing for the determination of the circuit court was therefore final, and a certificate of importance having been granted, the complainants were allowed an appeal to this court.

From the pleadings, stipulated facts and evidence it appears that the sewers in the city of Streator had for a number of years before 1919 been considered insufficient, unsanitary and unsatisfactory, and the reconstruction of them and the adoption of a system which would afford sewer

facilities to the whole city was a matter of public interest
and discussion, which in April, 1917, resulted in the selec-
tion of an engineer and the drawing of a contract to em-
ploy him to prepare plans for such a system.   The contract
was not then executed because of the beginning of the
war, but after its close the matter was again taken up, and
on February 14, 1919, an agreement was entered into be-
tween the city and Clausen, whereby, after reciting that
there was at the time no appropriation for the purpose and
therefore the board of local improvements had no authority
to bind any future city council or board but sanitary con-
ditions were such that immediate action should be taken
toward the preparation of a proper plan for and the in-
stallation of an adequate sewer system in the city, it was
agreed that Clausen should make a complete topographical
survey and plan an adequate sewer system and furnish com-
plete plans, specifications and detailed estimates of cost, for
a compensation to be paid by the city of three per cent of
the estimated cost of the new sewers.   Articles 7 and 8 of
the agreement were as follows:

"Article 7.—It is still further agreed between said par-
ties, notwithstanding anything else which may appear in
this agreement, that in view of the inability of the city to
enter into a binding contract at this time, said engineer will
stop work under this contract on or before May 10, 1919,
if notified so to do by said city, in which case said city shall
pay to said engineer such sum as may be fair and reason-
able on account of expenses incurred and services already
performed by said engineer, this sum, however, in no event
to be greater than two thousand ($2000) dollars, in which
case said engineer shall receive said sum in full satisfaction
and settlement of all claims or demands which said engineer
may have against said city, and in case of the termina-
tion of this agreement as is provided in this article, neither
party shall, after the payment of said sum, have any fur-
ther rights hereunder;  and it is further distinctly under-

stood and agreed between said parties that the members of said local board of improvements, by signing this agreement, shall under no circumstances incur any personal liability through, by or under this agreement or any of the terms hereof.

"Article 8.—This agreement is made on the supposition that the city council of said city of Streator will, after May 1, 1919, ratify this agreement and authorize the proper officers of said city to enter into a new agreement with said engineer on the same terms as are herein contained and provide for the carrying on of the work mentioned herein under the terms herein stated."

No appropriation had been made for the new sewer system. The fiscal year of the city began on May 1. After the city election in 1919, at a regular meeting of the city council held on May 5 the retiring special sewer committee recommended that the board of local improvements be authorized to enter into a contract with Clausen for the continuation of the preliminary work for a comprehensive sewer system. On May 19, 1919, the annual appropriation ordinance was passed, containing the item, "Special fund for new sewer system, $5000," and on July 1 a supplemental agreement was made between the city and Clausen, which, following a preamble reciting the previous agreement, contained the following provisions:

"And whereas article 5 of said agreement does not specify the manner of payment to said engineer of compensation under said agreement, it is now therefore agreed that said engineer shall be paid in the manner following: Three thousand ($3000) dollars on or before the 21st day of July, A. D. 1919, and a legally issued tax warrant or tax warrants of the city for the balance due and to become due under said agreement for compensation, with interest at the rate of five (5%) per cent per annum, payable annually from the date of the acceptance and approval of the estimates, plans and specifications of the engineer of the sewer

system by the city, it being understood that the city shall promptly upon the submission of said estimates, plans and specifications act upon same.

"Now, therefore, the parties hereto, the said engineer and the said city of Streator by its present board of local improvements, hereby expressly ratify, approve and confirm the said contract of February 14, 1919, and in all respects adopt the same, and all the terms and provisions therein contained, as the contract of the parties hereto, and agree that the work mentioned in the said contract of February 14, 1919, shall be carried on under the terms, provisions and conditions therein contained and the provisions and conditions herein contained."

Clausen began the work under the agreement of February 14, 1919, and prior to March 8, 1920, completed it by the preparation of plans, drawings and specifications for a sewer system, the cost of which was estimated at $1,215,-000. On the last mentioned date he presented to the board of local improvements his bill for services, amounting to $34,263, of which he had been paid $3000. The board of local improvements, by a resolution finding that the work had been completed according to the contract, recommended payment of the bill and referred the matter to the finance committee and the city council. The special sewer committee recommended to the council the acceptance of the work and the reference of the bill to the finance committee for favorable action. The finance committee recommended that the bill be approved and payment made as soon as it could be done legally, and on April 19, 1920, this recommendation of the finance committee was adopted by the council. On May 17, 1920, the annual appropriation ordinance was passed, which contained the following item, "Special fund for new sewer system, engineer, $5000," and that amount was then paid to Clausen. The population of Streator in 1900 was 14,079, in 1910, 14,253, in 1920,

14,779. The assessed value of all property subject to taxation was $4,336,611 in 1919 and $4,444,762 in 1920.

The contract was void because it was prohibited by law. The statute on the subject was amended in 1919. As it existed on February 14, 1919, it is found in Hurd's Statutes of 1917, page 330. Section 4 of article 7 of the Cities and Villages act provided then, as it does now, that "no contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided." Section 2 of the same article provided that "the city council of cities, and board of trustees in villages, shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. * * * No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them, or at a general or special election duly called therefor." Section 3 of the same article, with the exception of the proviso, (the terms of which are not important in this case since they have no reference to any action taken by the council,) was as follows: "Neither the city council nor the board of trustees, nor any department or officer of the corporation, shall add to the corporation expenditures in any one year anything over and

above the amount provided for in the annual appropriation bill of that year, except as is herein otherwise specially provided; and no expenditure for an improvement to be paid for out of the general fund of the corporation shall exceed, in any one year, the amount provided for such improvement in the annual appropriation bill."

Section 208 of division 1 of the Criminal Code was and is as follows: "Every person holding any public office, (whether State, county or municipal,) trust or employment, who shall be guilty of any palpable omission of duty, or who shall be guilty of diverting any public money from the use or purpose for which it may have been appropriated or set apart by or under authority of law, or who shall be guilty of contracting directly or indirectly, for the expenditure of a greater sum or amount of money than may have been, at the time of making the contracts, appropriated or set apart by law or authorized by law to be contracted for or expended upon the subject matter of the contracts, or who shall be guilty of willful and corrupt oppression, malfeasance or partiality, where no special provision shall have been made for the punishment thereof, shall be fined not exceeding $10,000, and may be removed from his office, trust or employment."

A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law can not at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. (*Botkin* v. *Osborne,* 39 Ill. 101; *Wells* v. *People,* 71 id. 532; *Board of Education* v. *Arnold,* 112 id. 11; *Penn* v. *Bornman,* 102 id. 523; *Cincinnati Mutual Health Assurance Co.* v. *Rosenthal,* 55 id. 85; *Borough of Milford* v. *Milford Water Co.* 124 Pa. 610; *Berka* v. *Woodward,* 125 Cal. 119; *Levison* v. *Boaz,* 150 id. 185.) The first three of these cases involved the statutory prohibition of the School law against the employment of any teacher in the public schools of the State who did not have at the

time of his employment a teacher's certificate obtained under the provisions of the School act. It was held in these cases that a contract with one who did not hold such a certificate was void and incapable of ratification; that the teacher could not recover from the district anything for his services though he had fully performed his contract; that a new contract made after the teacher had obtained a certificate and after the service was half performed, for the remaining half of the term at twice the rate of wages, was a mere evasion intended to accomplish indirectly what the law prohibited, and that payment to the teacher should be enjoined upon the application of a tax-payer. The next case (*Penn* v. *Bornman,*) was a suit by the assignee of a bank whose charter provided that no director should become indebted to the bank, against one of its directors as indorser of bills of exchange, and it was held that the prohibition applied to the bank as well as the directors. It was said that the simple inquiry was, "Could the bank, in palpable violation of this express prohibition in its character, go on and contract, *ad libitum,* with its directors, and yet be permitted to recover, just as though its charter contained no such provision? We put the question in this form for the reason we see no special circumstances in the case that take it out of the general rule that all contracts made in violation of an express statutory provision are inoperative and void, and no recovery can be had upon them." The question of estoppel was considered in that case, as follows: "Upon a careful examination of the record we have been unable to discover any evidence of overreaching, fraud or bad faith on the part of Bornman upon which to found an estoppel, or, indeed, anything exceptionable in his conduct at all, outside of the simple fact that he, like the bank, was a party to an agreement prohibited by its charter, and if this of itself affords matter of estoppel which deprives his legal representatives of the defense of illegality in the contract, it is manifest such a defense could not successfully

be interposed in any case where the agreement, as in this case, is simply prohibited by statute, and to so hold, would, under the pretense of construction, be, in effect, abrogating that provision of the charter by judicial legislation."

In many other cases contracts not prohibited by the express words of a statute but in violation of its terms have been held void, and it is a well established rule that where, from a consideration of all the provisions of the statute, the legislative intention clearly appears to declare an act unlawful no contract for the performance of that act can be enforced, and the rule applies to a contract to do an act contrary to the public policy of the State. *Shaffner* v. *Pinchback,* 133 Ill. 410; *Lake Fork Drainage District* v. *People,* 138 id. 87; *Bishop* v. *American Preservers' Co.* 157 id. 284; *Adams* v. *Brenan,* 177 id. 194; *Douthart* v. *Congdon,* 197 id. 349.

In *May* v. *City of Chicago,* 222 Ill. 595, a suit by a clerk in the city collector's office for extra wages which the city collector promised should be paid for work done outside the regular office hours, it was held that since no appropriation had been made for the extra work it was impossible by any act of the city officials to create a liability against the city for the work. The same question was decided in *Gathemann* v. *City of Chicago,* 263 Ill. 292. In *Hope* v. *City of Alton,* 214 Ill. 102, an ordinance had been passed creating a legal department, providing for a corporation counsel, and providing also that the city should not in any case be liable for the services of any attorney except the corporation counsel. While the ordinance was in force the council passed a resolution purporting to authorize the employment of another attorney than the corporation counsel. The attorney so employed brought suit for his services, but it was held that the ordinance had the force of law within the corporate limits; that the contract made by the city council in violation of it was void and the plaintiff was not entitled to recover.

Since no appropriation of money had been made for the new sewer system the contract of February 14, 1919, was void, and not only is everyone presumed to have known that the city and all of its officers were prohibited from making the contract, but the writing itself shows that the parties to it had this prohibition actually in mind at the time, for the writing expressly mentions the inability of the city to enter into a contract. This instrument was confessedly void, and being void was incapable of ratification. The writing of July 1, 1919, which purported expressly to ratify, approve and confirm the contract of February 14, 1919, had no power to give life and validity to that void act. The instrument of July 1 was not itself a contract, and if it were, it could have no effect beyond the appropriation of that year, $5000, for the prohibition against incurring any expense unless an appropriation concerning such expense should have been previously made was a limitation upon the powers of all the officers and departments of the corporation, of which all the parties had notice and which they could not disregard. When the council appropriated $5000 for the new sewer system, that was the limit of the expense which any of the officers or departments of the city could incur for that object, and the appellee had notice of this limit of their power. Even had a new contract been entered into on July 1, the amount of it could not have exceeded $5000, and the record shows that the appellee has already received $8000. In *Coles County* v. *Messer,* 195 Ill. 540, (a suit by a sheriff to recover from the county expenses incurred by him in the performance of the duties of his office,) it is said: "The county cannot be made liable for any expenditure unless the county board has fixed a sum for expenses and the aggregate expenses are necessary and within the amount. The fact that nothing has ever been fixed expressly for expenses does not authorize a recovery for expenses any more than the failure to fix compensation would authorize a recovery for reasonable compensa-

tion. If a county officer can recover from the county for expenses where no sum has been fixed or allowed for such expenses, he can recover any amount, within the fees collected, which he necessarily expends, and the provision of the constitution under which the board has the absolute power to fix and limit expenses would be nugatory and of no avail." The same principle applies here. In the absence of an appropriation there was no liability, and if it should be held that there was a liability, the provision which the statute intended for the protection of tax-payers would be nugatory and of no avail.

The appellee contends that there was a grave emergency requiring prompt action to avoid public calamity, and that to prevent an epidemic the contract was entered into with the approval of the State health department, the city council and the Commercial Association, all acting in good faith to remedy the conditions. In view of the facts that the same conditions had been the subject of public discussion for five or six years before February 14, 1919, and that, as shown by its answer, the city, after the lapse of nearly three years more, abandoned the intention of making use of the work in installing a new sewer system, it seems that the emergency was not so urgent and pressing that time might not have been taken to comply with the requirements of the law for authorizing an additional appropriation. However, the requirements were not complied with and no valid contract was entered into.

The appellee insists that the appellants are estopped to question the legality of the contracts. His claim is based on *Westbrook* v. *Middlecoff*, 99 Ill. App. 327. In that case the city council of the city of Paxton, without having made any appropriation for the purpose, through a committee entered into a contract for the erection of a city building, which was erected and partly paid for, leaving a balance of $920.86 due. Middlecoff, the mayor, proposed to advance the money to pay this balance, to be re-paid out of the

annual appropriation for the next year. The building was completed and accepted and occupied by the city, and the council afterward by a resolution directed the issue of a warrant to Middlecoff, after the adoption of the appropriation ordinance of the next year, for the amount advanced by him. A tax-payer's bill filed to enjoin the issue of this order and the payment of this amount was dismissed by the circuit court, and the Appellate Court affirmed the decree, on the ground that the city having received the benefits of the contract was estopped from setting up the irregular exercise of the power to contract the debt. It was said in the opinion: "Where the statute authorizes a municipal corporation to exercise a certain power but specifically regulates the mode in which it may be exercised, an attempt on the part of the municipal officers to override the regulations and exercise it in another manner will be restrained; but when the officers have so acted and the municipality has received the benefits of a contract thus irregularly entered into, it is estopped from setting up the irregular exercise of the power when called upon to pay for what it has received." The opinion is based on the theory that the statute authorized the city to contract for the erection of the building, and, as we have seen, the statute expressly prohibited the city from making the contract. Section 2 of article 7 of the Cities and Villages act is not a regulation of the mode in which the city may exercise its power to contract, but is a denial of the power and a prohibition of making any contract unless an appropriation shall have been previously made for the purpose. There was no attempt on the part of the municipal officers to override the regulations for the exercise of a power, but there was an attempt to override the law which prohibited the exercise of the power. The case was erroneously decided, for this error goes to the root of the whole matter. A number of decisions were cited, but none of them sustain the fundamental proposition in the case except another Appellate

Court case, (*Village of Harvey* v. *Wilson,* 78 Ill. App. 544,) which was also erroneously decided.

*City of East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 415, does not support the decision. The city of East St. Louis was organized under a special charter, and therefore the question of the application of section 2 of article 7, which has been quoted, could not arise in that case. The action was assumpsit for gas furnished the city during a period of six months under a contract for lighting the streets for a period of thirty years, and the objections made to it were that it was *ultra vires* because its term of duration operated as an improper abridgment of the legislative or governmental power of the city over the subject, and that it imposed an indebtedness upon the city in excess of the limitation in section 12 of article 9 of the constitution. The latter objection was held invalid, and as to the former it was held unnecessary to decide it because it applied only to the executory part of the contract and had no application to the executed part; that the legal effect of the contract was only for the lighting of the streets with gas, to be supplied from month to month during the pleasure of the city, for which the city was liable as one of the current, ordinary expenses. There was no question of the power of the city to make a contract for lighting the streets. The only question was as to the period of thirty years. The decision is based upon the principle that although there may be a defect of power in a corporation to make a contract in respect to the term of its duration, only, yet if the contract made by it is not in violation of its charter or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in execution of the contract to expend money and perform his part thereof, the corporation is liable on the contract.

*Badger* v. *Inlet Drainage District,* 141 Ill. 540, is another of the cases cited in support of the *Westbrook case,*

*supra,* which does not support it.  The opinion, after referring to *City of East St. Louis* v. *East St. Louis Gas Light and Coke Co. supra,* and stating the effect of the decision, continues:  "But in such cases there is power to do the particular thing, only it is not authorized to be done in the way it is done.  The doing of the thing in a proper way is a legitimate charge upon the revenues of the municipality, and so when it is done and is accepted and enjoyed by the municipality, the municipality gets what it had authority to get in a different way, and it should therefore pay for it what it would have had to pay had it got it in the right way.  In the present case, however, if we are right in the views we have expressed, there was no power in the commissioners to do the particular thing,—namely, remove the dam, abutments, etc.,—for the reason that the powers of the commissioners are limited to the work described in their report and accompanying plans and profiles, etc., and that work is not within the description therein."  So here, there was no power in the council to do the particular thing because it was not included in the appropriation ordinance, and the power was therefore expressly denied them by statute.

The decision in the *Westbrook case* applies the doctrine of estoppel to the city and then says:  "If a city which has received the benefits of a contract not *ultra vires* is estopped from interposing a defense based upon the manner in which the contract was made, individual tax-payers cannot by injunction restrain the city from paying for or restoring the benefits."  No authority is cited in support of this proposition, but *Badger* v. *Inlet Drainage District, supra,* is authority to the contrary, holding that the drainage commissioners could not by their acts and conduct enlarge their powers over the property within the district and estop the owners of the property without their knowledge and consent.  However, the question of estoppel does not enter into the case.  The city cannot be estopped to dispute the validity of a

contract which it had no power to make, for the reason that it has received the consideration. "Everyone is presumed to know the extent of the powers of a municipal corporation, and it cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts simply because it has done them and received the consideration stipulated for.—*Stevens* v. *St. Mary's Training School,* 144 Ill. 336; *Hope* v. *City of Alton,* 214 id. 102; *May* v. *City of Chicago,* 222 id. 595; *People* v. *Parker,* 231 id. 478." *Eastern Illinois Normal School* v. *City of Charleston,* 271 Ill. 602.

The judgment of the Appellate Court will be reversed and the decree of the circuit court affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*