Walter D. Wilson, Plaintiff-Appellee, v. Village of Forest View, a Municipal Corporation, Defendant-Appellant.

Gen. No. 49,687.

First District, Fourth Division.
March 25, 1966.

Ancel, Stonesifer, Glink & Levin, of Chicago (Louis Ancel and Marvin J. Glink, of counsel), for appellant.

Wisch, Crane & Kravets, of Chicago (Myron E. Wisch, Benjamin B. Crane, and James E. Brown, of counsel), for appellee.

ON REHEARING

MR. JUSTICE McCORMICK delivered the opinion of the court.

The Village of Forest View appeals from a judgment entered in the Circuit Court of Cook County against it and in favor of the plaintiff in the sum of $67,292.40. On the original hearing the defendant raised only two questions:

1) Was there a valid contract between plaintiff and defendant;

2) Did defendant abandon the Water Works Improvements and Sewer System for which the

plaintiff had drawn plans which were given to and used by the defendant?

From the record it appears that on November 10, 1959, the plaintiff filed a complaint in two counts against the Village of Forest View, a municipal corporation. The Village filed an answer, and a reply to the answer was filed by plaintiff. Count I was based on an oral contract allegedly entered into between the plaintiff and the Village in "the early part of November 1955." This allegation was denied by the defendant. The second count was based on the allegation of plaintiff that a subsequent contract was entered into on April 22, 1957, reducing to writing the verbal agreement which allegedly had been entered into between plaintiff and the Village. The defendant admits that there was such a written agreement but denies that the agreement was legally entered into, and further denies that the written instrument was a reduction to writing of the previous verbal agreement between the plaintiff and the defendant.

From an inspection of the pleadings it appears it was admitted by the Village that the plaintiff, Walter D. Wilson, a resident of Chicago, Illinois, was a duly licensed civil engineer engaged in the practice of that profession, specializing as a consultant and mechanical engineer, having been so engaged for the past 25 years; that the Village, in accordance with the law, proposed certain local improvements to be made in the said Village, which improvements involved the construction of certain water mains, reservoirs, and a pumping station and supply line, hereafter referred to as the Water Works Improvements; and for the construction of the combined sanitary and storm sewer system, which will hereafter be referred to as the Sewer System; that in section 5 of his complaint the plaintiff alleges that "pursuant to [his] employment" he prepared all the necessary plans, specifications, etc. In its answer the Village

402

states, "Defendant admits the allegations contained in Paragraph 5 of Count I of Plaintiff's complaint."

The total estimate of costs for the Water Works Improvements aggregated $942,193, which included the sum of $65,953 for the costs of engineering services for planning and supervision of construction, or a total of $819,708, excluding costs of engineering services and making, levying and collecting the special assessments. The total estimate of costs for the Sewer System aggregated the sum of $997,228, which included the sum of $74,792 for the costs of engineering services for planning and supervision of construction, or a total sum of $862,602, excluding the costs of engineering services and the costs of making, levying and collecting special assessments. Ordinances for the Water Works Improvements and Sewer System were presented to the President and Board of Trustees of the defendant Village, together with the recommendations of the Board of Local Improvement for such improvements. On December 19, 1956, the said ordinances were adopted and approved by the President and Board of Trustees of the Village. On January 11, 1957, plans, specifications and estimates of costs prepared by the plaintiff and approved by the Village were filed in the County Court of Cook County, pursuant to Local Improvements Act (Ill Rev Stats 1955, ch 24, art 84), and identified as Special Assessments Nos. 5 and 6 of the Village of Forest View, for the construction of the Water Works Improvements and the Sewer System.

An important question to be discussed is whether or not a contract entered into by the Village with an engineer (requiring that he prepare certain plans, specifications, etc., as a preliminary step to the processing of certain improvements which were to be paid subsequently by a special assessment) was a valid contract. Ill Rev Stats 1965 ch 24, § 8-1-7, provides:

"No contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof. . . ."

In the Supreme and Appellate Court cases interpreting this statute we find some contradiction.

The defendant relies upon DeKam v. City of Streator, 316 Ill 123, 146 NE 550 (1925). In that case sixteen taxpayers of the City filed an action to enjoin the City and its officials from paying any further sums to an engineer pursuant to certain contracts between him and the City, under which he had undertaken to design a sewer system. The contract, entered into in February 1919, recited that no prior appropriation had been made but stated that an emergency condition existed as a result of certain sanitary problems. The following May the annual appropriation ordinance was passed which included an item in the amount of $5,000 for the new sewer system. Subsequently, a supplemental agreement was executed which purported to ratify and affirm the prior contract. The engineer completed his work by March 1920, and submitted his plans and specifications together with his bill for $34,263. In May 1920, an appropriation ordinance for the next fiscal year was passed which included a similar item and amount for the new sewer system. From the two appropriations the engineer was paid a total of $8,000, and prior to plaintiffs' filing their action the City Council passed a resolution

authorizing the payment of the balance of the bill as soon as it could legally be done. The Supreme Court held the contract void as prohibited by law, holding that a contract expressly prohibited by a valid statute is void, and the prohibition of the legislature cannot be disregarded by the courts. The court was relying on the statute then in force. The case is based flatly on the theory that since no appropriation of money had been made the contract of February 14, 1919 was void and consequently could not be ratified, nor was the City estopped to question the legality of the contract since a city cannot be estopped where a contract is ultra vires.

In Simpson v. City of Highwood, 372 Ill 212, 23 NE 2d 62 (1939), a case which involved the validity of proceedings by the City of Highwood to provide facilities for a water supply to be connected from Lake Michigan to the existing system, the plaintiffs filed a representative suit in the Circuit Court against the City, its officers, the engineer, contractors, et al. The relief prayed was that the ordinance providing for the project and bond issue and all contracts thereunder be declared null and void. The proceedings provided for establishing a pumping and purification plant, etc., to be financed by a federal grant and water revenue bonds payable solely from the income of the completed project. Among other things the plaintiff contended that the expenditures of the proceeds of the bonds, and the contracts for such expenditures were unlawful because there was no prior appropriation for the expense of construction, engineering services or purchase of ground. Defendants claimed that an appropriation was not necessary. The statute we have referred to above was cited and the court held that these provisions were mandatory as to contracts and expenses payable from the general fund; that the proceedings were valid; that it was not claimed that the contracts were to be payable out of general funds, but only out of the special fund derived from the sale

of the bonds. The court discussed DeKam v. City of Streator, supra, and stated:

". . . At the time the DeKam contract was made the Local Improvement act made no provision for including engineering services in the cost of the improvement, and they could be paid only out of the general funds of the city. Subsequently the statute was amended and now permits the expense of engineering services to be included as a part of the improvement to be defrayed by special assessment or special tax. We have never held that contracts for or the expenses of constructing the portion of a local improvement which are not to be paid from general funds of a municipality must be preceded by an appropriation. The DeKam case is not controlling here. The contracts and expenditures in this case are in many respects analogous to those under a local improvement proceeding."

People ex rel. Anderson v. Village of Bradley, 367 Ill 301, 11 NE2d 415 (1937), was a mandamus suit brought to compel the Village to pay certain judgments obtained against it. The Village had entered into a contract with one Connors for the construction of a sewer. The sewer was built, accepted, and the acceptance duly confirmed. A subcontractor filed a proceeding to establish a lien. The Village filed a cross-petition and brought into the proceeding the contractor and all the subcontractors and interested parties. Some contractors filed intervening petitions to establish their liens. An account was taken and the Circuit Court entered a decree which found that there was a balance due the contractor in the sum of $41,577.10. It was further found in the decree that the Village had wrongfully diverted over $25,000 from the special assessment fund. Judgment was entered against the Village in favor of the subcontractors and the administratrix of Connors, who was the contractor, and

the court found certain various amounts to be due each. The defendants contended that the relators had a claim only against the funds to be derived from the special assessments to be collected from the territory specially taxed for the local improvement, and that the effect of the judgment would be to compel the taxpayers of the city, generally, to pay the several judgments when no such liability existed originally. The Supreme Court stated:

> ". . . As the situation existed at the inception of the contracts between the contractor, subcontractors and the village, the liability was limited to the funds collected from the special assessment levied. The change in the positions of the parties has been brought about by the default and misfeasance, if not malfeasance, of the village, acting through its governmental officials. The amount of public benefits assessed is not shown. If any, they would be payable out of the general taxes."

The court affirmed the judgment of the Circuit Court.

In Branigar v. Village of Riverdale, 396 Ill 534, 72 NE2d 201 (1947), a contract was entered into by which the subdividers agreed to finance and construct an extension of the Village's water system so as to serve the developers' subdivision, and the Village agreed to reimburse them on a percentage basis solely from the receipts and charges made for the use of the water facilities so constructed. The court said that the distinction made in earlier cases is "whether the special fund is a part of the general fund or a segregation of income which never becomes a part of the general fund." The Village contended that the contract was ultra vires. The plaintiffs contended that there are two types of ultra vires contracts—those where there is no power to contract whatsoever, and those where there is a power to contract but the contract is irregularly made. The court said

407

that the only question was whether at the time the contract was entered into the municipality had the power to enter into such contracts, and discussed the statute which provides that no contract can be made unless an appropriation shall have been previously made. In discussing the question as to whether an appropriation must have been made before the contract with the plaintiffs became valid, the court said that it was necessary to consider other cases decided in like situations, and various cases were discussed, including DeKam and Simpson. The court held that the sole question was whether under the statutes in effect at the time the contract was made, the municipality had power to enter into it. The court said that as in the Simpson case, under the contract, at the time of its inception no debt was created on the part of the defendant Village; that the contractors cannot look to the taxes or general fund of the Village for payment; they can only look to a percentage of the water revenue collected from the particular extensions in question. Consequently, it was held that no appropriation was necessary to validate the contracts and there was a power on the part of the defendant Village to enter into the contracts in question. In commenting on the failure of the Village to publish as required by the statute, the court said:

> ". . . We have already stated that where there is a power to enter into a contract but such contracts are irregularly made, and the city accepts the benefits of the contracts, it is estopped from setting up or relying on its own irregularity to defeat recovery. (McGovern v. City of Chicago, 281 Ill 264.)"

In DeLeuw, Cather & Co. v. City of Joliet, 327 Ill App 453, 64 NE2d 779 (1945), an engineering firm was permitted to recover from the general funds of the City the value of services rendered pursuant to a contract made without prior appropriation but providing

for payment solely out of a special fund to be obtained from a federal grant. Application for the grant had been withdrawn by the City, and the special fund was never established. The Appellate Court relied on the Simpson case and held that no prior appropriation was necessary, and followed the general rule of contract law that where one party abandons an express contract, as the city did in this case, or makes it impossible for the other party to perform, such other party may treat the contract as rescinded, and in case the plaintiff has not completed the contract, plaintiff may recover on a quantum meruit for the value of services. The court said:

". . . [T]he fact remains that appellant was retained by the city to do the engineering work at the regular meeting of the city council on July 17, 1933. *No price for the services was mentioned in the motion, and, if appellant is entitled to recover, it must be on a quantum meruit, which the parties agree is the basis claimed.*" [Emphasis supplied.]

The court cited Gray v. City of Joliet, 287 Ill 280, 122 NE 550, in which case it was held that where a city may by ordinance "provide for the payment of the expense of levying an assessment from the fund produced by levying it, it cannot relieve itself from liability to pay the reasonable expenses incurred where the city itself voluntarily abandons and dismisses the proceeding before judgment of confirmation."

Beling v. City of East Moline, 14 Ill App2d 263, 144 NE2d 865 (1957), also bears on the instant case. In that case an action was brought to recover $36,000 for services allegedly rendered by plaintiff as the eingineer designing a waterworks system. The City answered, saying there was no prior appropriation made for the amount claimed out of the general corporate fund of the City, and that therefore the City was not liable. From the pleadings it appears that the City had adopted

an ordinance providing for waterworks expenses and improvements. The entire costs, including the engineering expenses, were to be paid out of a fund derived from the sale of revenue bonds which bonds were to be a lien against the water revenues only and not a general obligation of the City unless the bonds were not sold. A contract was entered into between the City and the plaintiff for engineering services, and some work was performed. The City abandoned the project, repealed the ordinance, and no bonds were issued. In a trial before the court without a jury, a judgment was entered in favor of the City. The defendant again relied upon the prior appropriation statute. The plaintiff urged that because the contract provided payment of his fees from the special fund the statute did not apply and that the act of the defendant in repealing the bond ordinance and not continuing with the project prevented the special fund from coming into existence. The court cited and quoted from the DeKam case and the Simpson case, and held that under those cases the contract was void for want of a prior appropriation. The court stated that without such prior appropriation it was impossible for a city to create a liability against itself, payable out of its general funds. A rehearing was granted and another judge wrote an additional opinion in which the court reiterated the rule that where payment for engineering services under a contract is to come from the general fund of the city an appropriation for the payment of such services must be made prior to the execution of the contract; otherwise, the contract is void. The court said:

> "The law is well settled that where a city enters into a contract for the construction of a public works including engineering services, that provides for the payment of said services out of a special fund such agreement is valid. Simpson v. City of Highwood,

372 Ill 212, 23 NE2d 62; DeLeuw, Cather & Co. v. City of Joliet, 327 Ill App 453, 64 NE2d 779."

On examination of the contract, however, the court found that it provided for the engineer to be paid out of a special fund created by the sale of bonds, *but in case such bonds were not sold the plaintiff was to be paid out of the general fund,* and that under those circumstances the contract was void.

In Hall v. County of Cook, 359 Ill 528, 195 NE 54 (1935), the plaintiff filed an action in assumpsit against the defendant to recover for services. The declaration consisted of a special count and the common counts. On a trial before the court judgment was entered for the defendant. The Appellate Court affirmed the judgment of the Circuit Court (274 Ill App 503). The plaintiff in that case was appointed county architect in 1915 by the board of county commissioners, and the commissioners passed a resolution providing for the employment of a county architect. His rate of compensation was to be a fee of 6 per cent of the cost of the work under his supervision, in accordance with the rules of the American Institute of Architects, with such compensation to be paid only on work ordered by the county commissioners, and provided that all the plans and specifications for such work became the property of the county. The compensation was set out in detail, and in 1926 the county board had in view the erection of a civic auditorium to be built at the expense of the county but to be used by both the county and the City of Chicago. A resolution was adopted, a committee was appointed, and in 1927 the legislature passed an act providing that the county would have the right to acquire land for a municipal hall which should be erected from the sale of bonds of the county, subject to a referendum vote. A referendum election was ordered by the county commissioners as to a bond issue and to authorization of ad-

ditional taxes. The election was held and the proposals were approved. A committee of six leading architects and consulting engineers of Cook County entered into an agreement with the plaintiff, Hall, for the payment by him for their services in assisting him in and about preparing such plans, which agreement was approved by the county board. A bill was filed in the Circuit Court of Cook County to restrain the issuance of the bonds on the ground that the act of the legislature was unconstitutional; that the bond issue was void and the levy of additional taxes was unconstitutional; and in Campe v. Cermak, 330 Ill 463, 161 NE 761, the Supreme Court so held. Before the decision of the Supreme Court the county had collected, by virtue of taxes extended, the sum of $750,000. After the decision in the Campe case the County ordered this sum to be transferred to the general fund of the County. The Supreme Court in the Hall case held that there was a valid employment of the plaintiff, and stated:

". . . The county is not excused from the fulfillment of its obligation to the plaintiff because of the fact that the act of June 1, 1927, was found thereafter to be unconstitutional. [Citing cases.] The plans and prepared drawings are the property of the county. The plaintiff is entitled to recover. There is no conflict in the evidence as to the amount to be paid him under the contract. . . ."

In Deleuw & Co. v. City of Charleston, 298 Ill App 403, 19 NE2d 207 (1939), the court, in upholding a judgment entered in favor of an engineering corporation (based upon a contract to make plans, specifications, etc., for a waterworks improvement to be paid for by a loan from the federal government, which loan and public improvement were abandoned by the municipality), the court said:

412

". . . The courts of this State have held that where an individual undertakes a municipal improvement, agreeing to look wholly to a special fund to be created therefor, and thereafter the city abandons the proposed improvement, the municipality cannot avoid payment by setting up the contingent nature of the contract but is liable out of the general fund. Bunge v. Downers Grove Sanitary Dist., 356 Ill 531; Gray v. City of Joliet, 287 Ill 280; Murrie v. Harper, 249 Ill App 586."

See also Vail, Mills & Armstrong v. City of Paris, 344 Ill App 590, 101 NE2d 861.

In 1959 the Act (Ill Rev Stats 1965, c 24, § 8-1-7) was amended by adding the following:

". . . However, pending the passage of the annual appropriation ordinance for any fiscal year, the corporate authorities may authorize heads of departments or other separate agencies of the municipality to make necessary expenditures for the support thereof upon the basis of the appropriations of the preceding fiscal year."

In 1961, the Act was further amended by adding:

". . . However, if it is determined by two-thirds vote of the corporate authorities at a regularly scheduled meeting of the corporate authorities that it is expedient and in the best public interest to begin proceedings for the construction of a needed public work, then the provisions of this section shall not apply to the extent that the corporate authorities may employ or contract for professional services necessary for the planning and financing of such public work." *

---

* The amendment is in accord with an article in 1961 University of Illinois Law Forum at 357, entitled "Municipal Law," by Louis

413

■ ■ We conclude that since in the instant case, under the provisions of chapter 24, sec 8–1–7 (in force at the time the contract in question was entered into), the Village could have legally executed a contract for the improvement which was payable out of a special fund, there was no necessity for any appropriation being made out of the general fund at the time of the inception of the contract. Indeed, such an appropriation ordinance would have been inconsistent with the terms of the contract. When the Village, after utilizing the product of plaintiff's services, thereafter abandoned the project, it prevented creation of the fund out of which plaintiff was to have been paid, but it could not thus unilaterally impair the validity of the contract. It therefore remained liable to meet the obligations thereunder from another source—its general fund.

■ ■ The Village argues that since there was no record of a meeting of the Board of Trustees of the Village in November 1955, the trial court was not justified in finding that an oral contract was at that time entered into between the plaintiff and the Village. The trial court had a right to consider the paucity of records of proceedings of the Village and to take judicial notice of the subsequent court proceedings, both civil and criminal, brought against certain officials of the Village. The plaintiff and several persons who were members of the Village Board in 1957 testified that the oral contract alleged in the complaint had been entered into at a meeting of the Board of Trustees of the Village in November 1955. This was contradicted by other then members of the Board of Trustees, and while no record was

Ancel, one of the attorneys in the instant case. In that article it is stated on page 365: "It would appear that the statutory restriction on municipal contracts lacking a prior appropriation is not one that insures the careful exercise of municipal power, but serves primarily as a trap for the unwary."

414

introduced in evidence showing that the Board of Trustees passed a motion or discussed the question, it was admitted that in many instances there were no records in existence showing the proceedings of the Village Board. In our opinion, the court was fully justified in finding that an oral agreement had been entered into between the Village and the plaintiff. There is no dispute that the Village board purported to ratify an oral contract on April 22, 1957, and it is admitted that the Village used the plans, specifications and estimates of cost prepared by the plaintiff in its special assessment proceedings in the County Court of Cook County.

McQuillin, Municipal Corporations, Vol 10, § 29.103, p 415 (3d Ed) states:

". . . A municipality may ratify a contract (a) by express acts or (b) by conduct."

It is also said (p 418) that ". . . when a city enters into a contract, or becomes obligated to another by operation of law, within its municipal powers, the doctrine of estoppel obtains against it with the same force and effect as against an individual, and hence it cannot deny the binding force and effect of such contract or obligation."

On p 419 it is said: "As respects individuals, the principle is familiar that if one, with a full knowledge of the facts, ratifies the doings of another who has assumed to act in his name and behalf, he will be bound thereby as fully as if he had originally conferred authority on him in the premises. This ratification may be by express consent or by act or conduct of the principal inconsistent with any other supposition than that he intended to adopt and own the act done in his name. 'Ratification, like waiver, rests upon the doctrine of estoppel. An estoppel may arise against a municipality the same

415

as against any other party.' The principle of ratification has been said to apply to a municipal corporation the same as to an individual as to contracts which have been unauthorizedly entered into in its behalf, if it could have originally authorized such contracts. [Citing Potter v. Fon du Lac Park District, 337 Ill 111, 168 NE 908.]"

The Potter case, supra, involved a decree awarding specific performance. It was urged that the contract was invalid because the minutes lacked the necessary details to constitute them as authority to any officer of the board to enter into such a contract. The court found that it appeared from the record there was authority for the execution of the contract and that the plaintiff had in all respects carried out his part of the contract and therefore, a decree for specific performance was proper. In National Meter Co. v. Village of Bellwood, 192 Ill App 424, it is stated that a ratification of contracts may be by a resolution of the corporate authorities of the village.

The only question with reference to ratification of the contract which has been raised in the instant case is as to whether or not at the time of the inception of the contract the contract was valid. We have already found that it was a valid contract fully performed by the plaintiff, and subsequently ratified by the Village.

The plaintiff testified that he started to work on the plans, studies and estimates of costs, and that he submitted the plans to the Board for study in April 1956. (The plans and specifications for the proposed water works improvements and the proposed storm and sanitary sewers were introduced in evidence.) On August 23, 1956, an ordinance was passed and approved by the President and Board of Trustees of the Village which provided that a Board of Local Improvements for the Village was created which would consist of the President

416

of the Board of Trustees and all the members designated by name.* On October 22, 1956, at a meeting of the Board of Local Improvements, resolutions were adopted providing for the construction of the Water Works Improvements and the Sewer System. The specifications, plans and estimates of both projects as prepared by plaintiff were attached to the resolutions, and it was further provided that these improvements be constructed by special assessments. After a public meeting on November 7, 1956, the Board of Local Improvements resolved that the Board recommend to the President and Board of Trustees of the Village the adoption of ordinances for such improvements. On December 19, 1956, the Board of Local Improvements submitted to the Board of Trustees of the Village a recommendation that ordinances be passed providing for the construction of the Water Works Improvements and the Sewer System, and such ordinances were duly passed.

On January 11, 1957, the plans, specifications and estimates of cost as prepared by the plaintiff and approved by the Village were filed in the County Court of Cook County in accordance with the Local Improvements Act (Ill Rev Stats 1955, c 24, § 84–11, now § 9–2–13) identified as Special Assessments Nos. 5 and 6. Objections were filed in the County Court in the special assessment proceedings, and on May 9, 1958, the County Court sustained the objections and dismissed the petitions in the special assessment proceedings on the ground that the estimate of cost in each case exceeded $200,-000 and that they had not been referred to the proper committee or published as required by law before action was taken by the Village. No appeal was taken by the Village from that order.

---

* There was testimony in the record both by the plaintiff and by the members of the Board of Trustees that there was a Board of Local Improvements in existence in the Village in 1955.

417

In 1957 an election was held in the Village and of those in office during 1955 and 1956, the President and three members of the Board of Trustees were defeated, changing control of the affairs of the Village to the newly elected majority. A new clerk was also elected. The new Board continued to process the special assessment proceedings in the County Court up to the time that the May 9, 1958 order heretofore referred to was entered. Nothing further was done with reference to the Water Works Improvements or Sewer System until April 13, 1959, on which date the owners of certain properties filed suit to disconnect from the Village the areas involved in the improvements. An order was entered in the Circuit Court dismissing that suit, and an appeal was taken. In People ex rel. Jordan Co. v. Forest View, 21 Ill2d 384, 172 NE2d 780 (1961), the Supreme Court held that the dismissal was premature, and in 1961 remanded the case to the Circuit Court for further proceedings. On remand the case was tried and a judgment of ouster from all of the area was entered against the Village, and the area was disconnected from the Village. This order was entered on May 24, 1962. An appeal was taken by the Village and an order remanding the case to the Circuit Court was entered in this court (No. 48843). In the Circuit Court an order was entered on January 29, 1963, modifying the prior judgment and restoring certain areas to the Village, but not the area covered by the projects. The only reason that the special assessment proceedings were dismissed in the County Court was that the agents and attorneys of the Village had proceeded in violation of the provisions of the statute. The case was dismissed on May 9, 1958, and from that date the Village did nothing to follow up with proper proceedings. It was not until April 13, 1959, that the disannexing proceedings were filed which were finally disposed of by an order of the Circuit Court entered on January 29, 1963. Had the Village corrected

418

the errors and filed new petitions for confirmation, a legal charge might have been created upon the territory which was subsequently disannexed.* Its failure to take such steps was in effect an abandonment of the special assessment proceedings.

██ ██ In its petition for rehearing the defendant raises the question that the only recovery which could be had by the plaintiff in this case was a recovery on quantum meruit. This question was not raised in the defendant's original brief; nevertheless, we will consider it. The argument is based on the fact that in the original opinion, in most of the cited cases recovery was on a quantum meruit; however, a close examination of those cases will indicate that the contract was not fully completed. If recovery could have been had on a quantum meruit it would necessarily carry with it the implication that the Village had entered into an implied contract with the plaintiff. If the contention of the Village is correct that a contract could not be entered into, it would seem to strain all legal theories to hold that under such circumstances an implied contract would be valid, and a formal contract invalid. Corbin on Contracts, Vol 5, sec 1005, states:

> "The established remedy against a debtor for his breach of a contract to pay a sum certain in dollars of the legally established currency is a judgment for the exact principal sum in dollars. . . ."

The rule of contract law does not change because a municipality is involved. Hall v. County of Cook, supra.

In Izzo v. City of Loves Park, 20 Ill App2d 117, 155 NE2d 312, the court said:

---

* Richter v. City of Mt. Carroll, 398 Ill 473, 76 NE2d 452, holds that the obligation of a city contracted by it prior to the filing of a petition for disconnection of land is an indebtedness against the disannexed land until the debt is completely paid. Geweke v. Village of Niles, 368 Ill 463, 14 NE2d 482.

" 'It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: He may treat the contract as rescinded, and recover upon quantum meruit so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and *at the end of the time specified in the contract for performance, sue and recover, under the contract;* or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing.' L. S. & M. S. Ry. Co. v. Richards, 152 Ill 59–80; Banik v. Bishop-Stoddard Cafeteria Co., 288 Ill App 174, 5 NE2d 868." (Emphasis supplied.)

Furthermore, in the instant case, the plaintiff testified that the usual and customary charges for the preparation of plans and specifications and estimates of cost in the County of Cook in the year 1955 were 4 per cent of the estimated cost of construction for the preparation of the preliminary plans, final plans and specifications. The plaintiff further testified that he had received no payment from the Village, but that his out-of-pocket expenses were about $20,000. At the time plaintiff was questioned by his counsel about the customary charge an objection was interposed by counsel for the Village, who subsequently withdrew his objection and stated that they would not object to the testimony as to 4 per cent. Hence, there was proof in the record both of the amount which was agreed to be paid and the amount which reasonably could have been charged, and this evidence was sufficient to support the amount of the trial court's judgment.

A rehearing was granted in this case, and after a full consideration of the matters therein raised this opinion has been modified, but we adhere to our former conclusion. The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.