VICTOR LIGENZA, SR., *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF ROUND LAKE BEACH *et al.*, Defendants-Appellants.

Second District   No. 84—257

Opinion filed May 21, 1985.

James T. Magee and Hilary J. Negele, both of Rosing, Magee & Applehans, Ltd., of Round Lake, for appellants.

Edwin H. Benn, of Asher, Pavalon, Greenfield & Segall, of Chicago, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Defendants, the village of Round Lake Beach (village) and Rodney Brenner, the village's mayor, appeal from a summary judgment entered by the circuit court of Lake County in favor of the plaintiffs, the Fraternal Order of Police (FOP) and five of its trustees, Victor Ligenza, Sr., James Simoncelli, Lisa Ligenza, Susan Kirkbride, and Gary Bitler, acting as representatives of the FOP. Plaintiffs filed suit in the circuit court seeking to compel defendants to enter into binding arbitration pursuant to the terms of a collective bargaining agreement between the parties. The collective bargaining agreement was executed on November 3, 1982, and was to run until April 30, 1984. On appeal, defendants argue that summary judgment was improvidently granted because: (1) the village had no authority to enter into a multi-year contract without full prior appropriation; and, (2) significant questions of fact are in dispute. Plaintiffs have filed a cross-appeal, arguing that the lower court erred in failing to grant the FOP attor-

ney fees. Because we have determined that the cause must be reversed on the basis of defendants' first argument, we will address only that issue and the plaintiffs' cross-appeal.

The collective bargaining agreement in question contained various provisions relating to wages, salaries and benefits of the participating officers, and also set forth a grievance procedure to be followed in the event of a dispute arising between the parties. According to the terms of the agreement, the participating officers were to receive a 5% wage increase on May 1, 1983, and another 5% increase on November 1, 1983. The agreement further contained a savings clause which provided:

> "None of the provisions of this agreement shall be construed to require either the Village or the Lodge to violate any Federal or State laws. In the event any provisions thereof should conflict with any such laws, such provisions shall be modified to the extent necessary to conform to such laws."

On May 13, 1983, plaintiffs filed a grievance, pursuant to the terms of the contract, protesting the village's failure to pay the wage increase which had become due on May 1, 1983. After numerous requests by the FOP to abide by the agreement, the FOP was finally notified by Mayor Brenner and attorneys for the village that the village was not considering itself bound by the agreement. Plaintiffs then filed the instant action to compel arbitration and to enforce the provisions of the collective bargaining agreement.

During the course of the proceedings below, the village filed a motion to dismiss alleging that under section 8—1—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 8—1—7), any contract for which appropriations have not been previously made is null and void. The village further argued that as of the effective date of the agreement (November 1, 1982), appropriations to fund the entire contract had not been made by the village and thus the agreement was *ultra vires* and void pursuant to section 8—1—7. Plaintiffs subsequently moved for summary judgment to order defendants to submit to arbitration and to pay attorney fees. After numerous affidavits, counteraffidavits, replies, and memoranda on the issue were filed in the circuit court, defendants' motion to dismiss was granted and plaintiffs' motion for summary judgment and attorney fees was denied.

Plaintiffs then filed a motion to reconsider in which they alleged, in part, that defendants' year-end operating report for 1983 indicated that a surplus in excess of $93,000 existed for that year in the money allocated to salaries and to the police department generally. Plaintiffs

further alleged that the surplus was sufficient to cover the wage increases due under the contract, which they alleged would have totaled $25,088.13, and that the existence of the surplus indicated that in fact full prior appropriation for the contract had been made.

In response to plaintiffs' motion to reconsider, defendants repeated their argument that due to the multiyear nature of the contract, it was not possible for the village to have appropriated money to fund the entire term of the agreement. In a supplemental response to plaintiffs' motion to reconsider, defendants alleged that the 1983 budget appropriation for the police department, which totaled $573,033, was based upon a proposal submitted by plaintiffs which provided for no pay raise and no additional holiday pay. This proposal was attached to the response. Defendants also alleged that the budget surplus was not attributable to appropriations for wage and benefit increases but rather was attributable to salaries which were unpaid due to disability, a vacancy in a dispatcher position for which the salary had been budgeted, and compensation time accrued for holidays worked but not paid as of the date of the report. Finally, defendants alleged that in any event the budget surplus was insufficient to fund all wage and benefit provisions of the contract.

Plaintiffs' reply to defendants' supplemental response reiterated their argument regarding the 1983 surplus and further projected the cost to the village for the wage increases from May through December 1983. No mention was made in plaintiffs' response as to the cost to the village of the wage increases from December 1983 to the end of the contract term on April 30, 1984.

Defendants filed a further response to plaintiffs' motion to reconsider, and attached the affidavit of the village finance director, Chris Russo. The affidavit indicated that in November 1982 no appropriation had been proposed or passed for the years 1983 or 1984. Additionally, Mr. Russo stated that as of November 1, 1982, the total budget appropriation balance (from the previous year) available for expenditure for salaries for police officers, dispatchers, and general service officers was $303,040. The affidavit further stated that the budget appropriations necessary to fund the salaries for the duration of the contract were in excess of $738,237, and that the additional expenditures made in excess of $303,040 were not budgeted for as of November 1, 1982. Finally, Mr. Russo stated that these additional expenditures were not provided for until the next budget appropriations on May 1, 1983, and January 1, 1984.

Following defendants' response to the motion to reconsider, and after considering the memoranda filed by both parties on the issue,

the circuit court found that the budget report showed defendants had in fact appropriated sufficient monies in addition to the 1982 existing surplus to cover the obligations under the contract. Accordingly, the court vacated its previous order of dismissal, granted plaintiffs' motion for summary judgment, and denied plaintiffs' motion for attorney fees. Defendants' first and second motions to reconsider were denied, and a timely notice of appeal followed. Defendants' motion to stay enforcement pending appeal was granted, and defendants were ordered to post a $50,000 bond. Subsequently, plaintiffs filed a timely notice of cross-appeal.

■■ There is no dispute in the instant case that the village is a "municipality" subject to the proscriptions of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 1—1—1 *et seq.*). Pursuant to section 8—2—9 of the Code, the village is required to pass an annual appropriation ordinance in which all the objects and purposes shall be specified for each amount appropriated. (Ill. Rev. Stat. 1981, ch. 24, par. 8—2—9.) Under section 8—1—7, which is the subject of the instant case, any contract made without a full prior appropriation is null and void. (*Koudelka v. Village of Woodridge* (1980), 91 Ill. App. 3d 884, 888, 413 N.E.2d 1381; *Chicago Patrolmen's Association v. City of Chicago* (1974), 56 Ill. 2d 503, 508, 309 N.E.2d 3, *cert. denied* (1974), 419 U.S. 839, 42 L. Ed. 2d 66, 95 S. Ct. 68; see also *Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 857-58, 433 N.E.2d 726.) That section provides, in relevant part:

> "No contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, *unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality,* and no money belonging thereto shall be paid on account thereof." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 24, par. 8—1—7.

Section 8—1—7 (and its statutory predecessors) has consistently been construed as denying a municipality the power to contract, and thereby incur indebtedness, for a period longer than one year, at least in the absence of an enabling statute authorizing such a contract. (*In re Petition by City of East Peoria* (1982), 105 Ill. App. 3d 712, 714, 434 N.E.2d 781; *Avery v. City of Chicago* (1931), 345 Ill. 640, 648, 178 N.E. 351.) Further, a party contracting with a city is presumed to

know whether the city is prohibited from making a contract, and a contract made in violation of section 8—1—7 is void *ab initio* and cannot be enforced by estoppel or ratification. *In re Petition by City of East Peoria* (1982), 105 Ill. App. 3d 712, 714, 434 N.E.2d 781; *De-Kam v. City of Streator* (1925), 316 Ill. 123, 132, 136-37, 146 N.E. 550.

However, it has also been held that section 8—1—7 is not violated in situations where the funding of a multiyear contract is to come out of a special assessment fund, as opposed to the general fund of a municipality. (See, *e.g., Wilson v. Village of Forest View* (1966), 69 Ill. App. 2d 400, 217 N.E.2d 398; *Simpson v. City of Highwood* (1939), 372 Ill. 212, 23 N.E.2d 62.) Under these circumstances, it has been stated that at the time of the contract's inception, no debt is created on the part of the municipality, since the contractors cannot look to the general fund for payment, but can only look to a percentage of the special assessment collected. (*Wilson v. Village of Forest View* (1966), 69 Ill. App. 2d 400, 408, 217 N.E.2d 398; *Branigar v. Village of Riverdale* (1947), 396 Ill. 534, 72 N.E.2d 201.) Accordingly, no appropriation is necessary to validate the contract and it may be enforced on theories of ratification or estoppel. See *Wilson v. Village of Forest View* (1966), 69 Ill. App. 2d 400, 217 N.E.2d 398, and cases cited therein.

In determining whether a municipality may be estopped from asserting a defense of *ultra vires*, a distinction has generally been drawn between the lack of power in a municipality to act and the improper exercise of authority. In *Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 41-42, 230 N.E.2d 465, this court stated:

"Contracts entered into by a municipality which are expressly prohibited by law, and which under no circumstances can be entered into, are void and ultra vires. They may not be rendered valid thereafter by estoppel or ratification on the part of the municipality. However, there is another class of municipal contracts, distinct from the void type heretofore referred to, wherein the municipality has the power to enter into the contract, but where a portion thereof may be beyond its power, or its power may have been irregularly exercised. As to this class of contracts, a municipality may not assert its want of authority or power, or the irregular exercise thereof, where to do so would give it an unconscionable advantage over the other party."

(See also *Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 858, 433 N.E.2d 726.) The requirement of a full

prior appropriation imposed upon municipalities by section 8—1—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 8—1—7) has uniformly been considered as a condition precedent to the expenditure of city funds and therefore to the validity of the contract in issue. See *Guerine v. City of Northlake* (1971), 1 Ill. App. 3d 603, 274 N.E.2d 625; *Collins v. Village of Glen Ellyn* (1959), 21 Ill. App. 2d 373, 158 N.E.2d 89; *Greene v. City of Danville* (1953), 350 Ill. App. 440, 113 N.E.2d 348, *appeal denied* (1953), 415 Ill. 631; *Deyo v. Commissioner of Highways* (1930), 256 Ill. App. 3, *appeal denied* (1930), 256 Ill. App. xxxix; *DeKam v. City of Streator* (1925), 316 Ill. 123, 146 N.E. 550.

■ In the instant case, there is no allegation by plaintiff that funding for the contract in question was to be out of a special assessment collected for that purpose. To the contrary, there appears to be no dispute that payment was to be made from the general funds of the village. Accordingly, because this is a contract dealing to a large extent with the expenditure of general city funds, the requirement of a prior appropriation was a condition precedent to the validity of the contract. (See *Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 858, 433 N.E.2d 726, and cases cited therein.) The village is therefore not estopped from asserting the defense of *ultra vires*, even though it did not dispute the terms of the contract until May 1983, when the first wage increase became due.

■ The question remains as to whether a prior appropriation was in fact made at the time of the contract's inception on November 3, 1982. The record in the instant case contains no indication of the precise date upon which the village's annual appropriation ordinance for 1983 was passed. However, the affidavit filed by Mr. Russo, which was uncontradicted below, stated that in November 1982, no appropriation had been proposed or passed for the years 1983 and 1984. Mr. Russo also stated, without contradiction, that as of November 1, 1982, the appropriation balance available for expenditure on police department salaries was $303,040. The amount needed to fund the salaries for the duration of the contract was, according to Mr. Russo, in excess of $738,237, and this amount was not fully budgeted for until subsequent appropriations on May 1, 1983, and January 1, 1984. In contrast to Mr. Russo's affidavit was the village's year-end operating report for 1983, which showed that the village had in fact appropriated $573,033 for the total annual budget of the police department in 1983, and had only expended $479,815.47 of that amount as of December 31, 1983.

In concluding that sufficient funds had been appropriated to pay

for the agreement at issue here, the trial court reasoned that the village could use the existing surplus at the time of the contract's execution ($303,040), plus the $573,033 appropriated for 1983, to fund the obligations under the contract. While such a theory might be valid where the remaining appropriation was made *before* the execution of the contract, that is not the situation here. There is nothing in the record to refute the affidavit of Mr. Russo stating that as of November 3, 1982, sufficient funds had not yet been appropriated to cover the village's financial obligations under the collective bargaining agreement. When facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary unsupported allegations in the adverse party's pleadings. (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 507, 396 N.E.2d 34.) Accordingly, the statement made by the village finance director that during November 1982 no appropriations had been approved for the years 1983 or 1984, which statement was uncontradicted by the plaintiffs, and must be accepted as true. In light of this fact, and in view of the case law previously cited, we conclude under the current state of the record that the village was without authority to enter into the contract in question on November 3, 1982. This being the case, the contract in its present form would be void *ab initio*, and the subsequent appropriations, which resulted in a year-end surplus, could not serve to ratify the contract nor bar the village from raising the defense of *ultra vires. In re Petition by City of East Peoria* (1982), 105 Ill. App. 3d 712, 714, 434 N.E.2d 781; *DeKam v. City of Streator* (1925), 316 Ill. 123, 132, 136-37, 146 N.E. 550.

▮ Plaintiffs seek to avoid this result by arguing, without citation of authority, that the collective bargaining agreement exists by force of ordinance and thus section 8—1—7 does not apply. However, it is manifest that a city ordinance cannot make lawful what the State legislature has expressly declared to be unlawful. *Huszagh v. City of Oakbrook Terrace* (1968), 41 Ill. 2d 387, 390, 243 N.E.2d 831.

We note that our decision in this case does not reflect upon the severability of the contract at issue, or upon the question whether the contract is void in its entirety or only as to its economic portions. (See *Board of Education v. Chicago Teachers Union, Local 1* (1975), 26 Ill. App. 3d 806, 326 N.E.2d 158.) The trial court made no finding on this point, and thus the issue is not properly before us. Accordingly, we remand the cause to permit the parties to present this issue to the trial court, if they so desire.

▮ Because we have determined that the contract was void *ab*

*initio* in its present form and that plaintiffs were not entitled to recover the sums due under it, it is manifest that plaintiffs are also not entitled to recover attorney fees. The Federal cases cited by plaintiffs as support for their position hold that attorney fees are justified whenever an employer refuses to arbitrate without justification. (*Baldwin Piano & Organ Co. v. International Clerical Workers Union* (N.D. Miss. 1983), 564 F. Supp. 1262, 1272-73; *Washington Hospital Center v. Service Employers International Union* (D.D.C. 1983), 557 F. Supp. 206, 211.) Even assuming those authorities applied here, our holding in this case makes it clear that the village's refusal to arbitrate was due to a legitimate dispute over the contract's validity. Further, the record indicates that the trial court expressly refused to make a finding of "bad faith" on the part of the village.

For the reasons here stated, the summary judgment entered in plaintiffs' favor by the circuit court of Lake County is reversed and the cause is remanded for further proceedings. Whether plaintiffs can produce evidence contrary to Russo's affidavit is a matter for further determination below.

Reversed and remanded.

SCHNAKE and REINHARD, JJ., concur.